EDWARD REITER, Appellee, *vs.* THE STANDARD SCALE AND
SUPPLY COMPANY, Appellant.

*Opinion filed December 15, 1908.*

1. APPEALS AND ERRORS—*Supreme Court cannot weigh the evidence in suit at law.* On appeal from the Appellate Court to the Supreme Court in an action at law the Supreme Court can only examine the record to the extent of determining whether there is any evidence tending to support the plaintiff's cause of action and whether the rules of law have been properly applied.

2. SAME—*when request to give instructions directing a verdict is necessary.* The question whether the evidence in a suit at law fairly tends to establish the cause of action can only be preserved for review in the Supreme Court by requesting the trial court to give written instructions directing a verdict for the defendant.

3. SAME—*when judgment of the Appellate Court is conclusive of question that verdict was too large.* Where it is not claimed that the question of how much should be paid the plaintiff as salary for certain months was one which should not have been submitted to the jury, the contention that the jury allowed too much is settled by the Appellate Court's affirmance of the judgment on the verdict, except in so far as the Supreme Court is required to review the rulings of the trial court on evidence and instructions.

4. CONTRACTS—*when question whether plaintiff was discharged by employer is for the jury.* Where the evidence for the plaintiff in an action for salary tends to show that after he had been shown a telegram authorizing another person to take his place he had an interview with his employer, in which the latter stated he wanted the plaintiff to resign and to make a proposition for settlement, and that the employer made a counter-proposition asking the plaintiff to think it over but not to go to work unless notified, the question whether plaintiff was discharged is properly left to the jury.

5. SAME—*when salary may be recovered although no services were performed.* Where the question whether the plaintiff in an action for salary had been discharged is properly left to the jury as a question of fact under the evidence, and the jury are fairly instructed upon the subject of what would constitute a discharge by the employer, the jury may allow the amount due for salary for certain months, even though the plaintiff rendered no actual services for that time.

6. EVIDENCE—*when letters written by plaintiff to his employer are properly admitted.* In an action for salary, letters written by

the plaintiff to his employer after the plaintiff had been told not to go back to work until notified, which stated that the plaintiff did not consider himself discharged and asked for information on that point, are properly admitted in evidence, where their effect is limited, by an instruction, to the sole purpose of showing notice to the employer that plaintiff did not understand he was discharged.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding.

WINKLER, BAKER & HOLDER, for appellant:

When the sickness of the servant is such as to materially cut off his usefulness, to the injury of the master, the master will only be required, in law, to pay him for such time as he was employed, less the damages accruing by reason of the inability of the servant to perform his contract. Wood on Master and Servant, secs. 233, 234; *Leopold* v. *Salkey*, 89 Ill. 412.

Inability, by reason of illness, to perform a contract for personal services absolves both parties from liability. *O'Connor* v. *Briggs*, 182 Mass. 387; Wood on Master and Servant, sec. 233.

The doctrine of constructive service and of the right to recover therefor has been repudiated by the courts of England and of the United States. 26 Cyc. 999; *Cycle Manf. Co.* v. *Mueller*, 83 Ill. App. 359; *Jones* v. *Dunton*, 7 id. 580; *Howard* v. *Daly*, 61 N. Y. 362; *James* v. *Allen Co.* 44 Ohio St. 226.

It cannot with any propriety be claimed that an action for wages can be sustained when the servant has rendered no service. Wood on Master and Servant, sec. 246.

No particular evidence of a discharge is required. Any evidence of an intention and desire to dispense with the services of a servant, conveyed to him, whether verbally or in writing, is sufficient. 8 Ency. of Evidence, 509.

No particular form of words is necessary to constitute a discharge. Any form of words, either written or verbal, which conveys to the servant the idea that his services are no longer required and will not be accepted, will suffice to constitute a discharge. 20 Am. & Eng. Ency. of Law, 26; *Arnold* v. *Adams,* 27 N. Y. (App. Div.) 345; *Johnson* v. *Lumber Co.* 92 Minn. 393.

When appellant refused to receive appellee into its employ upon his return to its place of business he was fully and sufficiently notified of its election to treat the contract as abandoned, and he needed no other or different notice. *Leopold* v. *Salkey,* 89 Ill. 424.

A dismissal of the servant or a refusal to allow him to continue to work, while not a rescission of the contract, is a breach of it, which will authorize a recovery of damages for the whole injury which the servant may have sustained. *Olmsted* v. *Bach & Myers,* 78 Md. 132.

When an employee is discharged or prevented from fulfilling his contract of employment he cannot bring action and recover wages as wages, or salary as salary, for the period after his discharge or time when prevented from working, but his only remedy is for damages for breach of contract. *Cycle Manf. Co.* v. *Mueller,* 83 Ill. App. 359; *Howard* v. *Daily,* 61 N. Y. 362; *Arnold* v. *Adams,* 27 N. Y. (App. Div.) 345; *Olmsted* v. *Bach & Myers,* 78 Md. 132.

ASHCRAFT & ASHCRAFT, (CHARLES F. RATHBUN, and E. M. ASHCRAFT, of counsel,) for appellee:

The plaintiff has at no time been discharged by the defendant. *Klaw* v. *Ehrlich,* 83 Hun, 610.

Plaintiff was entitled to compensation, under the contract, as manager of the business for the months of May, June and July, 1906. *Cuckson* v. *Stones,* 102 Eng. C. L. 248; *Rex* v. *Inhabitants,* 2 Burr. S. C. 675; *Railway Co.*

v. *Railway Co.* 33 Fed. Rep. 701; 41 id. 319; *Gienar* v. *Meyer,* 2 H. Black. (C. P.) 606; *Rex* v. *Inhabitants,* 1 Strange, 423; *Thomas* v. *Railway Co.* 60 Fed. Rep. 7.

Plaintiff was entitled to recover, under the contract, his agreed compensation for the months of August, September and October, 1906, before the suit was brought. Wood on Master and Servant, (2d ed.) sec. 97; *Douglas* v. *Chapin,* 26 Conn. 76; *Berg* v. *Carroll,* 16 Daly, 73; *Jennings* v. *Beale,* 146 Pa. 125; *Whittle* v. *Frankland,* 110 Eng. C. L. 49; *Vail* v. *Jersey Falls Manf. Co.* 32 Barb. 564.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an action of assumpsit brought November 6, 1906, in the circuit court of Cook county, to recover installments of salary of appellee for the months of May to October, 1906, inclusive, at $300 a month. Judgment for $1700 was entered on the verdict, and the Appellate Court for the First District having affirmed the judgment, the cause was thereupon appealed to this court.

The agreement was in writing and originally made with the Standard Scale and Supply Company, Limited, and afterward assumed by appellant. It provided that appellee should act as manager of said company's branch house in Chicago for the period from March 1, 1904, to December 31, 1911, at $3600 a year, payable in monthly installments of $300, and a certain share of the net profits of said branch house, and should give "his best services for the promotion and welfare of the business." The evidence tends to show that as early as October, 1905, appellant had become dissatisfied with the results of the Chicago branch and asked for appellee's resignation. He remained in his position, however, in charge of the office and his salary was paid up to and including April, 1906. During a part of May and June appellee was ill and away from the office a portion of the time. July 3, 1906, appellant wrote that it

was an opportune time for appellee to offer his resignation. Appellee by letter refused to do this. Appellant on July 17 wrote again, stating that the appellee's "management of the business has been so unprofitable as to make it necessary for us to have your resignation. We are not liable for unearned salary during your absence. We desire to close the matter speedily and amicably, if possible, and will be glad to have a proposition from you so as to wind up the affair at once, and only a reasonable proposition can be considered." Apparently appellee did not reply to this letter, and on July 31, when he went back to the office, he was shown by Mindrum, one of the salesmen who had been temporarily in charge of the office during appellee's sickness, a telegram directing Mindrum to "assume charge Chicago house; refuse to recognize Mr. Reiter as manager." Appellee thereupon collected his personal effects and left the office. The next day he received a letter again asking his resignation. August 5 Frank Gill, then president of appellant company, came to Chicago and talked the matter over with appellee. Appellee testifies that he told Gill that he was ready to go back to work the next morning and take the management, and Gill replied, "No, we want you to resign;" that substantially this answer was returned to a number of appellee's suggestions, and appellee said he would not resign,— that he was going to hold them to the contract; that he also asked Gill if he was to consider that he had been discharged, and the only answer was, "We want you to resign." The appellee testified that he and Gill had another interview a few days later, at the Grand Pacific Hotel, in Chicago, and substantially the same conversation was had; that appellee then said to Gill, "I won't resign; if I don't resign I suppose you have got to discharge me, or else I will go back to work." Gill said, "I think you would rather resign;" that Gill asked him to make a proposition, and finally appellee said he would resign and cancel the contract if the company would pay him $5000. Gill then made a

counter-proposition that he would give the appellee $1000 and a further sum contingent on a certain claim; that no agreement was reached, and on their separation Gill stated that he was to be in Chicago several days and in the meantime appellee should consider the counter-proposition. Appellee replied that he could not consider it and asked if he should go down to the office Monday morning, "and he (Gill) said, 'No, don't come to the office until I notify you.' Those were the last words we had with each other." Appellee testified that he never saw Gill thereafter. On August 20, and again on October 1, he wrote letters to the company, saying, among other things, that he had refused to resign as requested and was left in doubt as to whether he was expected to remain in charge of the business as manager; that he had called at the office to take charge of the business and Mindrum stated that under instructions from the company he could not permit it. Appellee further testified that he had kept himself in readiness, from the time he had talked with Mr. Gill, to go back to work at any time. Gill's testimony was not taken, but an affidavit was allowed to be introduced in evidence stating that if he was present he would testify to certain things. For the purpose of this decision it is unnecessary to consider or state the contents of this affidavit.

As we understand appellant's argument, it is contended that the proof shows that the appellee was discharged when Mindrum took possession of the office under the telegram of instructions; that he could not recover in this action for wages after that date; that whatever he did recover must be in an action for damages for his discharge, and that he should only have recovered for the months of May, June and July for what his services were actually worth, and that the jury allowed a greater sum for those months than the evidence justified. Most, if not all, of these are questions of fact to be determined by the jury, the trial court and the Appellate Court. This court has consistently held

in numerous decisions since the Appellate Court act was passed, some thirty years ago, that it was not the province of this court to determine or pass upon such questions further than to ascertain whether or not there was in the record evidence fairly tending to prove the facts alleged in the declaration. The weight to be given to the evidence must be submitted to the jury, and when their finding of fact has been approved by the trial and Appellate Courts no question of fact as to whether one witness' story is more reasonable or credible than another, whether the evidence is sufficient to support the verdict, or whether the weight or preponderance of the evidence is against the verdict of the jury, can be raised here. We can, therefore, only examine the record so far as to enable us to determine whether there is any evidence fairly tending to support plaintiff's cause of action and whether the rules of law have been properly applied by the trial court. (*Frazer* v. *Howe,* 106 Ill. 563; *Lake Shore and Michigan Southern Railway Co.* v. *Richards,* 152 id. 59; *Cicero and Proviso Street Railway Co.* v. *Meixner,* 160 id. 320; *Offutt* v. *World's Columbian Exposition,* 175 id. 472; *Libby, McNeill & Libby* v. *Cook,* 222 id. 206.) The question whether the evidence fairly tends to establish a cause of action can only be preserved for review in this court by asking the trial court to give written instructions to direct a verdict, as was done in this case. *Variety Manf. Co.* v. *Landaker,* 227 Ill. 22.

The appellant's main contention is that the appellee was discharged and could not recover in an action for wages after the month of July, 1906; that no particular form of words is necessary to constitute a discharge; that any form, whether written or verbal, which conveys the idea that a person's services are no longer required and will not be accepted is sufficient to constitute a discharge. (20 Am. & Eng. Ency. of Law,—2d ed.—p. 26, and cases there cited; *Mee* v. *Bowden Gold Mining Co.* 81 Pac. Rep.—Ore.— 980.) Conceding this to be the law, did the evidence of

appellee, considered by itself, fairly tend to establish appellee's claim that he was not discharged before November 1, 1906, up to which time the jury allowed him for wages? Manifestly he was not considered discharged at the time of his last interview with Gill, August 11, and the statement of Gill when they separated on that date, that appellee should consider the proposition of settlement and not to come to the office until notified, was plainly of such a character as to justify the question of fact whether he was then discharged, to be submitted to the jury. The appellee had no further direct communication from any officer of the company who had authority to discharge him. In view of this last statement of Gill to him he certainly had a right to wait a reasonable time for a notification as to whether he should go back to work. No notification came, and on August 20, and again on October 1, he wrote to the company calling attention to the fact that he did not consider himself discharged and asking information on that point, but received no reply to either letter. It would have been a very simple matter for the company to have written him in plain terms that he was discharged. Apparently from this record appellant did not desire to discharge appellee but to force him to resign. Ordinarily, whether an employee has been discharged is a question of fact to be determined from the evidence to be submitted to the jury. We think, under the circumstances shown on this record, appellee's testimony fairly tended to support the allegations in the declaration, and hence the question as to whether he was discharged before November 1, 1906, was rightly submitted to the jury.

In this connection appellant contends that appellee recovered for the last three months for wages for constructive services after his discharge, and that under the great weight of authority wages for constructive services cannot be recovered; that as appellee was prevented by appellant from rendering services for these three months this fact of prevention practically amounted to a discharge; that the trial

court should have so held as a matter of law,—citing in support of this contention, among others, the following authorities: *Olmstead* v. *Bach,* 78 Md. 132; *Curtis* v. *Lehmann Co.* 38 So. Rep. (La.) 887; *Leopold* v. *Salkey,* 89 Ill. 412. The facts in these cases are so very different from the facts here that it would serve no useful purpose to review them. Appellant, by several instructions, varying in form, had presented to the jury the question whether or not, under the facts as shown in this record, appellee had been discharged. The jury were told that if appellee was discharged he could not recover for any salary under the contract. They were also told that if appellee had been requested to resign, and informed through an agent or employee, by authority of defendant, that he would no longer be recognized nor permitted to act as manager, and was not thereafter so recognized or permitted to act, such action amounts to a discharge. The jury were also told that a discharge might be by acts of the employer as well as by express words, and that if appellant adopted means reasonably clear to convey to plaintiff the fact that it desired to discharge him, this amounted to a discharge. They were again also instructed that any information given to him to the effect that his services were no longer desired and that he would not be permitted to work, and he was not thereafter permitted to work, constituted a discharge. If the question of what amounted to a discharge was properly submitted to the jury, as we think it was on the evidence in this record, then these instructions fully covered every aspect of the law and evidence now contended for by appellant. Appellant asked other instructions on this same point which were refused. We think there is no error in this, both for the reason stated by the trial court, that they assume certain disputed facts as true, and for the reason that they were fairly covered by other instructions given.

Appellant does not contend on the point that the jury allowed too large an amount for services for the months of

May, June and July, that the question of what should be paid during these months should not have been submitted to the jury. The question having properly been submitted to the jury, its verdict thereon, approved by the decision of the trial and Appellate Courts, is conclusive on this court, except in so far as we are required to examine whether the trial court properly applied the law as to the admission and exclusion of evidence and instructions. The evidence showed that appellee had looked after the business while he was at home, sick, by having letters brought out to him and by talking over matters with Mindrum, who was immediately in charge of the office, and it also appeared that Mindrum had been paid $100 extra during the months appellee was away. Appellant asked an instruction on this point, which stated that there should be deducted from plaintiff's salary whatever was paid to other parties who took charge in his absence. The trial court modified the instruction by stating that if the evidence showed that Mindrum has been paid $100, or any other sum above his regular salary, by reason of appellee's sickness, then appellant was entitled to have that amount credited. The jury actually did deduct $100. As the evidence in the record does not tend to disclose that any other expenses had been incurred by appellant on account of appellee's sickness during these months, the modification could not have harmed appellant.

In this connection appellant complains of the refusal of the trial court to permit evidence showing Gill's expenses on his trip from Pittsburg, where the home office was located, to Chicago, when he had his interviews with appellee. No attempt was made to show that Gill made this trip because appellee was sick or because of the trouble. On this state of the record the objections to questions asked as to Gill's expenses in coming to Chicago were properly sustained.

Appellant also contends that the letters of the appellee of August 20 and October 1 were improperly admitted. While no demand for salary was necessary, it was proper

for appellee to show his readiness to perform the contract, and it was not reversible error to admit those letters, limited in their effect, as we think they were, by an instruction given for appellee that they were admitted solely for the purpose of showing that notice had been given to appellant that appellee did not understand he had been discharged.

We find no reversible error in the record. The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*