HERBERT HINCHLIFFE, for use, etc., Defendant in Error, vs. THE WENIG TEAMING COMPANY, Plaintiff in Error.

*Opinion filed June 22, 1916—Rehearing denied October 11, 1916.*

1. PRACTICE—*Supreme Court cannot weigh evidence in suits at law.* In suits at law coming through the Appellate Court the Supreme Court cannot weigh the evidence and determine whether it preponderates for or against the verdict.

2. CARRIERS—*persons transporting goods for hire are private or common carriers.* Persons engaged in the business of transporting goods for hire are either private or common carriers, the question in each case being one of fact for the jury under proper instructions from the court.

3. SAME—*truckmen, as a general rule, are common carriers.* Cartmen or truckmen, as a general rule, are common carriers if they undertake to carry goods for hire for the general public, and, as common carriers, they are liable for all loss not resulting from the act of God or the public enemy.

4. SAME—*carrier may be sued in assumpsit or tort.* In case of the loss of goods through the negligence of a common carrier the carrier may be sued in assumpsit for breach of the contract, ex-

274 — 27

press or implied, to carry the goods safely, or it may be sued in an action on the case for the wrong, and the allegations of the declaration will be substantially the same in either form of action, except as to the technical phraseology employed.

5. AMENDMENTS—*when failure to file amendment after leave is granted is not fatal.* Where the plaintiff, after all the evidence in an action of tort against a common carrier is in, submits an amendment changing the form of action to assumpsit by substituting the proper technical phraseology, and leave is granted to make the amendment, a failure to formally file the amendment is not fatal, after verdict, where the defendant treated the amendment as actually made and filed a plea of the general issue in assumpsit. (*Wisconsin Central Railroad Co.* v. *Wieczorek,* 151 Ill. 579, and *Landt* v. *McCulloch,* 206 id. 214, distinguished.)

WRIT OF ERROR to the Branch "B" Appellate Court for the First District;—heard in that court on appeal from the Municipal Court of Chicago; the Hon. HOSEA W. WELLS, Judge, presiding.

FRANCIS E. CROARKIN, for plaintiff in error.

LOUIS ZIV, and F. S. LOOMIS, for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

On January 19, 1910, the defendant in error, Herbert Hinchliffe, for the use of Carson, Pirie, Scott & Co., commenced a first-class action in tort in the municipal court of Chicago against the Wenig Teaming Company, plaintiff in error. The declaration, as originally filed, contained two counts. The first count charged plaintiff in error on its liability as a common carrier. The second count charged it as bailee for hire, only,—that is, as a private carrier. February 7, 1910, plaintiff in error filed a plea of not guilty, and the cause came on for trial before a jury. The bill of exceptions shows that on the morning of February 5, after all the evidence had been heard, plaintiff in error moved the court to instruct the jury to find the defendant not guilty, which motion was denied; that thereupon, in chambers, the

court gave defendant in error leave, on motion, "to change the form of action to assumpsit," and also gave him leave to amend his declaration by adding after the words "trespass on the case" the words "on promises," and at the end of the first and of the second count by striking out the words "to the damage of the plaintiff in the sum of $1310.03, and therefore the plaintiff brings this suit, etc.," and inserting in lieu thereof, "whereby said defendant became liable to pay said plaintiff said sum of money, and in consideration thereof the defendant well and truly promised to pay the same, nevertheless said defendant, not regarding said promise, refused, and still does refuse, to pay the same, to the damage of said plaintiff in the sum of $1650." The trial court gave plaintiff in error all day of said February 5 in which to plead to said declaration as amended, stating at the time that the record would show "that by agreement the defendant may present any defense under the general issue that might have been presented under any special plea if pleaded." Plaintiff in error objected and excepted to this ruling of the court. The common law record shows that on this same day plaintiff in error filed a plea of the general issue in assumpsit. The record, however, does not show that defendant in error actually filed an amendment to his declaration changing it from an action in tort to one in assumpsit, in accordance with the leave granted him. The jury returned a verdict assessing defendant in error's damages at $1292.77. Thereafter motions for new trial and in arrest of judgment were overruled and judgment entered for that amount. On appeal to the Appellate Court the judgment was affirmed. The case has been brought here on petition for *certiorari.*

Defendant in error for over twenty years had been engaged in the teaming business in Chicago. He had an arrangement with Carson, Pirie, Scott & Co. to do teaming and hauling for them, and to provide as many teams each day as they should notify him, on the preceding day, that

they would need.  If he was short of teams he would telephone the plaintiff in error or others engaged in the teaming business and request them to furnish him extra teams. Plaintiff in error was engaged in the teaming business in Chicago, hauling merchandise from depots to warehouses and from warehouses to stores, ready to do business for anyone who sought its services for compensation.   January 3, 1910, Carson, Pirie, Scott & Co. notified Hinchliffe that they would need the following day a certain number of teams, which was greater than he could furnish.   On the evening of that day Hinchliffe testified he telephoned an official of plaintiff in error asking how many teams it could furnish him the next day, and this official promised that he would furnish Hinchliffe three teams to go to warehouse "C" of Carson, Pirie, Scott & Co. the next morning; that these teams were not there the next morning as promised; that after telephoning several times during the day to plaintiff in error, the understanding was finally reached that only one team could be furnished.   That team not arriving at the store, about four o'clock in the afternoon the defendant in error again telephoned to plaintiff in error's office and was advised by the same official over the telephone that a team had been sent belonging to the Guthmann Transfer Company, another teaming concern, and that evidently something was wrong.   The evidence shows that early on the morning of January 4 a representative of plaintiff in error telephoned the Guthmann Transfer Company's office requesting the use of a team and truck for the day; that the team and truck were furnished and the teamster drove to said warehouse of Carson, Pirie, Scott & Co. and was given a load of merchandise, which was never delivered to any store of Carson, Pirie, Scott & Co. as directed; that the teamster and merchandise disappeared; that the horses and empty truck wagon were found that night on the west side of the city, near the Northwestern railroad tracks.   The evidence is not entirely clear as to just how the teamster

for this team and truck was employed. There is evidence tending to show that a man bearing a slip of paper or order from plaintiff in error called at the Guthmann Transfer Company's place of business, gave his name as Moran, handed in the slip or order, was put in charge of the team and truck and drove away; that a man giving his name as Moran called with this team and truck at warehouse "C" and obtained the load of merchandise in question.

The chief argument of counsel for plaintiff in error is that the evidence does not sustain the verdict; that the preponderance of the evidence proves that Moran was not employed by plaintiff in error and was not under its authority or direction; that it was not shown that the Moran who took the team from the Guthmann Transfer Company was the same Moran who obtained the merchandise at warehouse "C;" that the witnesses did not sufficiently identify him. Counsel in his brief has argued these questions of fact at great length and in much detail, insisting that a conspiracy existed between Hinchliffe and the Guthmann Transfer Company to place the responsibility upon plaintiff in error. We find no evidence of such conspiracy in the record, but these and many other questions discussed by counsel for plaintiff in error are questions of fact. It is not the province of this court to determine or pass upon such questions in an action at law, further than to ascertain if there is any evidence in the record fairly tending to support plaintiff's cause of action. The weight to be given to the evidence must be submitted to the jury, and when their finding of fact has been approved by the trial and Appellate Courts no question of fact as to whether the story of one witness is more reasonable or credible than that of another, or whether the weight or preponderance of evidence is against the verdict, can be raised in this court. (*Reiter* v. *Standard Scale Co.* 237 Ill. 374; *Heidenreich* v. *Bremner,* 260 id. 439; *Fesser* v. *Chicago and Illinois Midland Railway Co.* 267 id. 418.) There is evi-

dence in the record fairly tending to support the verdict of the jury and that plaintiff in error employed the teamster, Moran, and had .full power to discharge him, and there is evidence, also, that fairly tends to support the verdict on all other controverted questions of fact. Upon these questions the verdict of the jury and judgment of the trial court, affirmed by the Appellate Court, are binding here. We can only inquire as to whether the rules of law were properly applied in the trial court.

Counsel for plaintiff in error argues that it is not a common carrier. That is a question of fact to be passed on by the jury under proper instructions. (*Bare* v. *American Forwarding Co.* 242 Ill. 298.) All persons who undertake for hire to carry the goods of another are either private or common carriers. Private carriers, like ordinary bailees for hire, are liable only for injury or loss of the goods intrusted to them when it results from the failure of themselves or their servants to exercise ordinary care. Common carriers are liable, as insurers, for all injuries or loss not resulting from the act of God or the public enemy. (4 R. C. L. 549.) While it has sometimes been doubted whether cartmen or truckmen employed to carry goods from one part of the city to another are to be regarded as common carriers, it is a general rule that when they undertake to carry goods for hire for the public generally and as a common employment in the city they are common carriers. (*Parmelee* v. *Lowitz*, 74 Ill. 116; 4 R. C. L. 557, and cited cases.) We are inclined to the view that on the proof in this case, under the authorities, plaintiff in error would be held to be a common carrier. If that be true, the instructions of the court on the question of carrier were more favorable to plaintiff in error than the law justified, for those instructions only made plaintiff in error liable if it was a private carrier or ordinary bailee for hire.

Counsel for plaintiff in error further insists that the court erred in permitting defendant in error to change his

form of action during the trial. Section 39 of the Practice act provides that "any time before final judgment in a civil suit, amendments may be allowed on such terms as are just and reasonable, * * * changing the form of the action, and in any matter either of form or substance, in any process, pleading or proceeding which may enable the plaintiff to sustain the action for the claim for which it was intended to be brought or the defendant to make a legal defense." In *May* v. *Disconto Gesellschaft,* 211 Ill. 310, this court sanctioned the action of the trial court in permitting the amendment of an original declaration in tort so as to make it a declaration in assumpsit. We cannot see how plaintiff in error was injured by this change. The allegations remained the same in the amended declaration as in the original, the only modification being in a few technical words changing the form of action and in the amount of the *ad damnum.* There is nothing to show here that plaintiff in error would have put in other or different evidence had it known earlier of the change.

Counsel for plaintiff in error further contends that as the common law record does not show that defendant in error actually filed a formal amendment to his declaration, in accordance with the leave of court, changing the form of the action from tort to assumpsit, the allegations of the declaration are not sufficient to sustain the verdict and judgment. No question is made that the allegations of the declaration are not ample, if proved, to sustain the verdict and judgment. The only point is that the original declaration was not properly amended so as to make the technical part an action in assumpsit rather than in tort. As in the case of common carriers of passengers, a common carrier of goods and merchandise may be sued for an injury to merchandise damaged by his negligence, either in assumpsit for breach of the contract, express or implied, to carry the goods safely, or he may be sued in an action on the case for the wrong. (3 Hutchinson on Carriers,—3d ed.—

sec. 1403; *Chudnovski* v. *Eckels,* 232 Ill. 312.) Mani-
festly, the allegations in the declaration in either form of
action, in a case of this kind, would be substantially the
same, the only difference in the form of the declaration be-
ing a technical one as to stating the form of the action.
Counsel for the defendant in error presented the actual
amendment to the declaration they desired to make and
the court entered an order granting leave to so amend.
Plaintiff in error thereafter filed the general issue in as-
sumpsit. The case was later submitted to the jury and
considered and passed on by them as if the declaration were
in assumpsit. "Where there is an order granting leave to
amend and the subsequent proceedings in the cause are
based upon the assumption that the amendment has been
made, the course is to consider the order as standing for
the amendment itself. Where a motion to amend has been
granted but no amended pleading appears in the judgment
roll, it may be treated, on appeal, as if actually made."
(1 Ency. of Pl. & Pr. 641.) This is the rule adopted in
most jurisdictions in this country. (3 Am. & Eng. Ency.
of Law, 813, and cases cited; *Horne* v. *Meakin,* 115 Mass.
326; *Johnston* v. *Farmers' Fire Ins. Co.* 106 Mich. 96;
*Holland's Heirs* v. *Crow,* 34 N. C. 260; *Kretser* v. *Cary,*
52 Wis. 374; *Lyon* v. *Brown,* 65 Tenn. 64; *Hellyer* v.
*Boyser,* 76 Ind. 35.) Section 1 of our statute on amend-
ments and jeofails provides that the trial court shall have
power to permit amendments "in any process, pleading or
proceeding in such action, either in form or substance, for
the furtherance of justice, on such terms as shall be just,
at any time before judgment," etc. The same chapter fur-
ther provides, in considerable detail, as to the pleadings that
may be amended, and section 7 states: "The omissions,
imperfections, defects and variances in the preceding sec-
tion enumerated, and all others of a like nature, not being
against the right and justice of the matter of the suit, and
not altering the issue between the parties or the trial, shall

be supplied and amended by the court where the judgment shall be given, or by the court into which such judgment shall be removed by appeal or writ of error." To consider this amendment on this record as actually made in no manner affects the merits of this cause, neither is it against "right and justice." This court has repeatedly held that the failure to file a plea would be cured, under this statute, by verdict. (*Brazzle* v. *Usher*, Breese, 35; *Graham* v. *Dixon*, 3 Scam. 115; *Armstrong* v. *Mock*, 17 Ill. 166; *Kelsey* v. *Lamb*, 21 id. 559; *Stumps* v. *Kelley*, 22 id. 140; *People* v. *Lindblom*, 215 id. 58.) It has been held, also, that where the representatives of a deceased party to the action are made parties on motion, it is unnecessary to amend the declaration formally by the insertion of their names. (*Hoes* v. *VanAlstyne*, 20 Ill. 202.) In *Deutsch Central Verein* v. *Lartz*, 192 Ill. 485, it was held that where a motion was made to amend the demurrer, when it purported to be for all the defendants, and make it a demurrer for one defendant only, the order of the court allowing this amendment was all that was necessary, without formally making the amendment in the pleading.

Counsel for plaintiff in error relies on the rulings of this court in *Wisconsin Central Railroad Co.* v. *Wieczorek*, 151 Ill. 579, *Landt* v. *McCulloch*, 206 id. 214, and like cases, in which objections were made to the introduction of certain evidence on the ground of variance between the allegations and the proof, leave being given to amend but no amendment being actually made. This court held that there was a variance between the allegations and the proof, and the amendment could not be considered as having been made on the record in those cases. There is nothing to show in those cases that the parties proceeded as if the amendment had been actually made, as they did in this case. We do not think the ruling in that class of cases is controlling here. The amendment here was actually offered and is in the record. It did not in any way change the character of the

proof, either for plaintiff or defendant. Counsel for plaintiff in error pleaded the general issue as if the amendment had been filed and presented the case to the jury assuming that said amendment had been made and was in no way prejudiced on account of the failure to actually file the amendment. Under a reasonable construction of our statute on amendments, and by the weight of authority in this and other jurisdictions, we think, on this record, that the failure to file the amendment should not cause the reversal of this judgment.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*