THE SCOVILL MANUFACTURING COMPANY, Defendant in Error, *vs.* RAY F. CASSIDY *et al.* Plaintiffs in Error.

*Opinion filed October 24, 1916—Rehearing denied Dec. 7, 1916.*

1. APPEALS AND ERRORS—*when judgment is binding on Supreme Court.* On appeal in a suit at law no question can be raised in the Supreme Court as to whether one witness is more credible than another or as to the preponderance of the evidence, and if there is evidence tending to support the verdict, the verdict of the jury and the judgment of the trial court, affirmed by the Appellate Court, are binding on the Supreme Court.

2. SAME—*rules of municipal court must be included in bill of exceptions.* The rules of the municipal court of Chicago can only be taken cognizance of by a court of review when they are included in a bill of exceptions.

3. SAME—*error in reasoning of the opinion of Appellate Court is immaterial if judgment is correct.* If the decision of the Appellate Court be correct, the fact that the reasoning of the opinion is erroneous in no way affects the judgment when it is before the Supreme Court for consideration.

4. GUARANTORS—*what is a continuing guaranty.* Where by the terms of the written guaranty it appears that the parties look to a future course of dealing or a succession of credits the contract is generally considered a continuing guaranty.

5. SAME—*when amount of guaranty must be considered a limitation on liability and not on credit to be extended.* Where guarantors agree to be liable in a continuing guaranty for the price of goods furnished a mercantile corporation up to a certain amount they cannot insist that they were to be liable only if the goods contracted for did not exceed that amount, where the goods contracted for at the time the contract of guaranty was executed exceed the amount limited in the guaranty contract, and where, under the wording of the entire contract, it is clear that the amount of the guaranty is a limitation upon the liability of the guarantors and not upon the credit to be extended.

6. SAME—*burden is on creditor to prove indebtedness.* In an action upon a contract of guaranty, where the guarantors have agreed to be liable for the price of goods manufactured and delivered by a creditor up to a certain amount, the burden is on the creditor to show that the goods were manufactured and delivered

and that the amount is still due in order to prove the liability of the guarantors.

7. SAME—*a guaranty contract must be construed according to intention.* While contracts of guaranty must be strictly construed and cannot be changed without the guarantors' consent, they must be construed, like any other contract, according to the intention of the parties.

8. SAME—*when change in name of debtor corporation will not relieve the guarantors of liability.* Where guarantors agree to be liable in a continuing guaranty for the price of goods manufactured and delivered to a debtor corporation a change in the name of such corporation will not affect the guaranty, where the corporation continues in the same business, with the same officers, and all the stockholders, including the guarantors, vote in favor of the change.

9. EVIDENCE—*when admissions by general manager of corporation as to amount of indebtedness are competent.* The admissions of the president and general manager of a corporation are competent against the corporation as to the amount owed by it to the plaintiff when made in the execution of the duties imposed upon him as general manager and concerning matters which are within the scope of his authority.

10. SAME—*when the declarations of a principal are admissible against guarantors.* In an action on a guaranty contract, where the principal is not a party to the suit, his declarations are admissible against the guarantors if they are made in the course of the performance of the business for which the guarantors are bound and during the continuance of the interest involved.

11. SAME—*when copy of an account is competent evidence.* In an action on a guaranty contract, where the admissions of the principal as to his indebtedness are competent, a copy of an account showing the indebtedness and admitted to be correct by the principal is competent evidence.

12. SAME—*witness may refresh or assist his memory by the use of a written instrument.* A witness can testify only to such facts as are within his knowledge and recollection, but he is permitted to refresh or assist his memory by the use of a written instrument, memorandum or entry in a book; and it is not necessary that the writing shall have been made by the witness himself or that it should be an original writing or even admissible in evidence, provided that after inspection of the record the witness can speak to the facts from his own recollection.

13. PRACTICE—*allowing an amendment is largely discretionary with court.* While an amendment which is essential to the proper presentation of a defense should be permitted, the allowance of an amendment, under section 1 of the statute on amendments, is largely discretionary with the court, and an amendment which would be of no benefit to the party seeking it need not be allowed.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Municipal Court of Chicago; the Hon. JACOB H. HOPKINS, Judge, presiding.

VAIL & VETTE, and BLUM, WOLFSOHN & BLUM, for plaintiffs in error.

FRANCIS X. BUSCH, ALFRED W. CRAVEN, and ELMER M. LIESSMANN, for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was an action brought in the municipal court of Chicago by defendant in error against plaintiffs in error as guarantors under a certain contract. The jury returned a verdict of $5000 in favor of defendant in error, upon which judgment was entered. On appeal to the Appellate Court that judgment was affirmed. The case was brought to this court on a petition for *certiorari.*

During the latter part of 1906 the Canchester Incandescent Kerosene Light and Heat Company, which was a selling and distributing company, negotiated with defendant in error, a manufacturing company, to furnish it a special burner for kerosene lamps and the parts used in connection therewith. As a result of these negotiations such a contract was made and an instrument of guaranty was executed by plaintiffs in error at the time or shortly after such contract was made, reading as follows:

"Whereas, Canchester Incandescent Kerosene Light and Heat Company, located in Chicago, Ill., desire to have certain articles manufactured by the Scovill Manufacturing Company, a corporation duly organized and located in Waterbury, Conn., and for that

purpose has given the Scovill Manufacturing Company a certain order for the manufacture of said articles and expect in future to give other orders for the manufacture of other articles.

"Now, therefore, the undersigned, in consideration that the Scovill Manufacturing Company will accept all such orders and will manufacture and deliver all such goods to the said Canchester Incandescent Kerosene Light and Heat Company as the same shall be required from time to time, do hereby become surety for the punctual payment to the said Scovill Manufacturing Company of all money which shall become due to the said company by reason of the manufacture and delivery of goods which have been or shall hereafter be ordered by the said Canchester Incandescent Kerosene Light and Heat Company, and if any default shall be made in such payment or parts of payment, we do covenant and agree with the said Scovill Manufacturing Company to pay the said company on demand of such sum or sums of money as shall be sufficient to make up such deficiency and fully satisfy the terms and conditions of any order or orders which have been or shall hereafter be given to the said company by the said Canchester Incandescent Kerosene Light and Heat Company without requiring any notice of non-payment or proof of demand being made, provided that the sum required to make up said deficiency shall not exceed five thousand dollars ($5000).

"Given under their hand and seal this 24th day of Dec., 1906.

RAY FULTON,<br>JACOB ALTER.

Witness: Henry S. Blum, D. J. Canchester."

Ray Fulton, who signed this guaranty, is a woman. Before this trial she had married a man by the name of Cassidy. She and the other guarantor, Alter, were both directors and stockholders in the Canchester Company, and for at least a part of the time involved in these transactions Mrs. Cassidy was secretary and treasurer of the concern and Alter was vice-president. The Scovill Company furnished the Canchester Company under the first order, during the years 1909 and 1910, goods valued at $7000. In March, 1908, the Canchester Incandescent Kerosene Light and Heat Company changed its name to the Canchester Light Company. The burners were delivered after the change in name. There was no change in the stockholders or officers of the corporation after the name was changed. A second order (the exact amount in value of this order is

275 — 30

not clear from the record but apparently it was more than $10,000) was given in March, 1910, and practically all of the goods were manufactured and delivered to the Canchester Company before its failure, the latter part of January, 1912. Previous to this last mentioned date defendant in error accepted another order from the Canchester Company for the manufacture and delivery of goods worth approximately $6000, and had manufactured about $5000 of the goods but had delivered none of them.

Plaintiffs in error both testified on the trial that they had stated to Henry W. Adams, Jr., the manager of defendant in error's Chicago office and who accepted the various orders for these goods from the Canchester Company, before the second order was made, that they would not be responsible as guarantors for more than the first order. Adams denied positively that they had made any statements of that kind at any time to him or that he had talked with either or both of them with reference to their being no longer liable under the guaranty contract. The weight to be given to the evidence, when submitted to a jury and when their finding of fact has been approved by the trial and Appellate Courts, cannot be inquired into here. No question can be raised in this court as to whether one witness is more credible than another or whether the preponderance of the evidence is against the verdict. (*Reiter* v. *Standard Scale Co.* 237 Ill. 374; *Fesser* v. *Chicago and Illinois Midland Railway Co.* 267 id. 418.) There being evidence in the record fairly supporting the verdict on this point, the verdict of the jury and the judgment of the trial court, affirmed by the Appellate Court on these questions of fact, are binding on us.

Counsel for the plaintiffs in error also seek to limit the transaction to which the guaranty would apply to the first order of the Canchester Company, claiming that the wording of the guaranty contract so limits it. There is some conflict in the authorities as to when a guaranty is a con-

tinuing or a limited one. Where by the terms of the written guaranty it appears that the parties look to a future course of dealing or a succession of credits it is generally considered a continuing guaranty. (*First Nat. Bank* v. *Waddell*, 4 Ann. Cas. [Ark.] 818, note; 14 Am. & Eng. Ency. of Law,—2d ed.—1139.) The wording of this contract indicates clearly that it was intended to cover not only the order that had already been agreed upon by defendant in error and the Canchester Company, but future orders of the same nature. Obviously, by their actions plaintiffs in error so construed the contract. It is further argued in this connection that the guarantors intended not only to limit their liability to $5000, but that they should be liable only if the goods ordered and 'delivered should not exceed in value $5000. This argument seems to us without merit. The order made at the time this contract was executed was for a sum in excess of $5000. Furthermore, under the wording of the entire contract it seems clear that the amount of the guaranty was a limitation upon the liability of the guarantors and not upon the credit to be extended. The reasoning of the court under a somewhat similar guaranty in *Taussig* v. *Reid*, 145 Ill. 488, in our judgment tends strongly to uphold this view. The cases cited and relied on by counsel for plaintiffs in error on this point, such as *Ryan* v. *Trustees of Shawneetown*, 14 Ill. 20, and *Finney* v. *Condon*, 86 id. 78, we do not deem in point, as the facts and the wording of the contracts under consideration were very different from those here.

In January, 1912, Adams, the manager of defendant in error, was seeking to collect money on account of goods already manufactured and delivered, and learned then, if not before, that the Canchester Company was in straitened circumstances. D. J. Canchester was then, and had been for years, the president and general manager of the Canchester Company, and all of the business that Adams had done for defendant in error with the Canchester Company was done

through him.   On Sunday, January 21, 1912, at Canchester's request, Adams and Roblin, the latter the Chicago attorney of the defendant in error, called on him at the offices of the Canchester Company in Chicago to talk over their account.   It appears from the testimony of Adams and Roblin (Canchester did not testify) that this interview was arranged by Canchester not only to talk about the account with defendant in error, but with the hope that the Scovill Company, being the principal creditor of the Canchester Company, might be willing to extend further credit so as to tide the Canchester Company over its difficulties.   Canchester stated to them during this interview that unless his company did get help of some kind it would have to go into bankruptcy, and Adams and Roblin told him, before the interview was over, they thought that was the proper course to take.   It is apparent from the testimony that they did not encourage him in any way in thinking that the defendant in error would further assist the Canchester Company.   At this interview Adams had with him the statement of the account between defendant in error and the Canchester Company and the amount due defendant in error, and they discussed this statement and the amount due. The books of the Canchester Company showing defendant in error's account were brought out and examined by them, and Canchester stated that there was then due the defendant in error, as shown by the books, the sum of $13,670.13. This was different from the amount shown to be due on the statement of account by the defendant in error by $48. Canchester stated that this difference was doubtless due to the fact that the books of account of the Canchester Company had not been fully posted.   It is obvious from a reading of the testimony as to this interview that the parties parted without any positive understanding as to what, if any, steps should be taken by the Canchester Company with reference to going into bankruptcy, or what should be done by either company with reference to the balance owed by

the Canchester Company to defendant in error. There was talk during this interview of the Canchester Company going into voluntary bankruptcy, but it appears that a few days later the petition in bankruptcy was filed on behalf of defendant in error by its attorney, Roblin, the reason for this change not being shown in the record.

It is strenuously argued by counsel for plaintiffs in error that Adams' and Roblin's testimony concerning Canchester's admissions as to what was due defendant in error from the Canchester Company was improperly admitted in evidence over their objections. There can be no question, under the authorities, Canchester being the president and general manager in charge of the business of the Canchester Company, that his admissions would be competent against the Canchester Company itself as to the amount owed by that company to defendant in error, as those admissions were made in the execution of the duties imposed upon him as general manager and concerning matters which were within the scope of his authority. (*Chicago, Burlington and Quincy Railroad Co.* v. *Coleman,* 18 Ill. 297; *New England Ins. Co.* v. *Schettler,* 38 id. 166; *Lake Shore and Michigan Southern Railway Co.* v. *Baltimore, etc. Railroad Co.* 149 id. 272; *Carey* v. *Wolff Co.* 72 N. J. L. 510; *Paulson Mercantile Co.* v. *Seaver,* 8 N. D. 215.) The general rule is, that where the declarations or admissions of the principal are made in the course of the performance of the business for which the surety or guarantor is bound, they are evidence against the surety or guarantor, but his subsequent declarations, having no direct connection with his acts in the business guaranteed, will not bind the guarantor. (2 Brandt on Suretyship and Guaranty,—3d ed.—secs. 794, 798.) Ordinarily, where the principal is not a party to the suit, his declarations are not admissible unless they are made while in the employment in which the principal was engaged. The statements or admissions, to be competent against the guarantors, should be made during the continu-

ance of the interest involved and not after that interest has ceased. (Jones on Evidence,—2d ed.—sec. 238; 6 Ency. of Evidence, 298.) This court, in *Swift* v. *Trustees of Schools,* 189 Ill. 584, held that in a suit upon a township treasurer's bond an admission by him that he owed the township a certain amount is evidence of that fact, not only against him but against his co-obligors. This case was quoted with approval in *Swisher* v. *Deering,* 204 Ill. 203, where the action was against the guarantor alone, and it was there held that the admission of the principal, in a suit upon a guaranty contract, as to the amount due and owing was not only evidence of the fact as against the principal but as against the surety, notwithstanding the statement was made after the principal had gone into bankruptcy.

Counsel for plaintiffs in error insist that the statement in this last case that such an admission would be binding on the guarantor is not in point here but is merely *dictum,* as the contract specifically provided in that case that the written acknowledgment of the principal would be binding on the guarantor. We do not think the rule laid down in this last case upon the question here involved was *dictum,* but even if it was, it was the expression of opinion upon a point in a case deliberately passed upon by the court and should be held as judicial *dictum* rather than mere *obiter.* (*Law* v. *Grommes,* 158 Ill. 492; *Rhoads* v. *Chicago and Alton Railroad Co.* 227 id. 328.) The conversation between Adams, Roblin and Canchester on January 21, 1912, and the admission of Canchester as to the amount due and owing, were clearly a part of the transactions and business between the Canchester Company and the defendant in error to which the guaranty contract applied. The interests of the principal, the Canchester Company, and of the guarantors, the plaintiffs in error here, as to the guaranty contract, in legal effect were the same as they had been from the time the guaranty contract was executed. The admissions were made, according to the testimony, in the regular

course of the business and were parts of the transactions with which the guarantors were connected by their contract. Without question, by the great weight of authority these admissions were competent as against plaintiffs in error as to the amount due and owing, the payment of which to the extent of $5000 they had guaranteed. Jones on Evidence, (2d ed.) sec. 238; 1 Elliott on Evidence, sec. 253; *Foster* v. *Gaston,* 123 Ind. 96; *Sanders* v. *Keller,* 18 Ida. 590; *United States* v. *Cutter,* 2 Curtis, 617; *Father Matthew Society* v. *Fitzwilliams,* 84 Mo. 406; *Bank of Brighton* v. *Smith,* 12 Allen, (Mass.) 243; *State* v. *Newton,* 33 Ark. 276; *McKim* v. *Blake,* 139 Mass. 593; 2 Brandt on Suretyship and Guaranty, (3d ed.) sec. 798; *Hall* v. *United States Guaranty Co.* 77 Minn. 24; *Ingle* v. *Collard,* 1 Cranch's C. C. 134; 34 Cyc. 1643.

What has been said with reference to the admissions of Canchester as to the amount due fully answers the objections of counsel for plaintiffs in error as to the admission of a copy of defendant in error's account taken from the Canchester Company's books, which was admitted to be correct by Canchester at this interview between himself, Adams and Roblin. The question as to whether or not those books were accurately kept is not necessary to be decided The books were not admitted in evidence but only a copy of the account, which Canchester admitted to be correct, and these admissions were a part of the transactions here in question and were admissible against the plaintiffs in error.

Counsel for plaintiffs in error also object to certain testimony of Adams given after he had refreshed his recollection from an order book kept in the defendant in error's office in Chicago. The book itself was not introduced or offered. Some of the entries were made by Adams himself and other entries apparently under his direction. The material point of the evidence was whether certain goods, the payment of which had been guaranteed by the plaintiffs in

error, had been delivered to the Canchester Company. A witness can testify only to such facts as are within his knowledge and recollection, but he is permitted to refresh and assist his memory by the use of a written instrument, memorandum or entry in a book, and it is not necessary that the writing should have been made by the witness himself or that it should have been an original writing, provided that after inspecting the record he can speak to the facts from his own recollection. Neither is it necessary that the writing thus used should itself be admissible in evidence. (1 Greenleaf on Evidence,—15th ed.—sec. 436; Jones on Evidence,—2d ed.—secs. 877, 878; 5 Chamberlayne's Modern Law of Evidence, sec. 3507; 40 Cyc. 2452; *Miner* v. *Phillips,* 42 Ill. 123.) Adams, after refreshing his recollection, was able to testify as to the months in which the goods were delivered although he could not give the exact date. But the exact date was not material, the only question being whether the goods were delivered before the Canchester Company went into bankruptcy, and it is manifest from reading Adams' testimony that he could testify to those facts independently of any refreshening of his recollection from the book itself.

Counsel for plaintiffs in error further argue that the liability of their clients was not satisfactorily proved on the trial. The record shows, without contradiction, that the only business for which plaintiffs in error were sought to be held liable to the defendant in error for the Canchester Company was the manufacture, sale and delivery to it of a special burner. The evidence shows that three orders from the Canchester Company were accepted by defendant in error; that the goods in the first order were all delivered and apparently all paid for; that the goods in the second order were manufactured and practically all delivered to the Canchester Company before it went into bankruptcy, and that the third order had been placed long before the failure and most of the goods manufactured, but none of them de-

livered, before that date. An item of $2000 for tools and one for $75 for loan were paid by the Canchester Company shortly after they were charged, and neither of those items enters into the claim on account of which plaintiffs in error are held liable. The whole item of $13,670.13, the balance Canchester admitted his company owed defendant in error on January 21, 1912, was for burners manufactured and delivered by defendant in error to the Canchester Company. No evidence was offered on behalf of plaintiffs in error in any way attempting to deny the manufacture and delivery of the goods as admitted by Canchester. Indeed, both plaintiffs in error testified that the goods included in the first order were delivered, and, as we understand the testimony, they knew the goods were being delivered on the second order. In seeking to avoid their liability on the second order they testified they had positively told Adams before the second order was accepted by defendant in error that they would not be responsible for any further guaranty. It is true that the burden was on defendant in error to show that the goods had been manufactured and delivered and the amount that was still due in order to prove the liability of plaintiffs in error, but the evidence in the record was ample to show not only the manufacture and delivery of these goods to the Canchester Company but the failure of said company to pay for them, and therefore on those points fully justified the verdict and judgment against the plaintiffs in error. Moreover, these were controverted questions of fact, and on such facts the judgment of the Appellate Court affirming the judgment of the trial court is binding here.

Counsel for plaintiffs in error further argue that the change of the corporate name in March, 1908, from the Canchester Incandescent Kerosene Light and Heat Company to the Canchester Light Company relieved the guarantors from all liability and obligation thereafter. While the decisions hold that contracts of guaranty must be

strictly construed (*Tolman Co.* v. *Rice*, 164 Ill. 255,) and cannot be changed without the guarantor's consent, they must be construed like any other contract,—that is, according to the intention of the parties. (*Harlburg* v. *Crumpf*, 151 Mo. 16; *Shreffler* v. *Nadelhoffer*, 133 Ill. 536; *Barclay* v. *Warne*, 143 id. 19; *Swisher* v. *Deering, supra.*) Where the guaranty is a continuing one, a change simply in the name of a corporation has been held not to affect the guaranty. (*City Nat. Bank* v. *Phelps*, 97 N. Y. 44; see, also, *People* v. *Backus*, 117 id. 196; *Springfield Lighting Co.* v. *Hobart*, 68 S. W. Rep. 942; 1 Parsons on Contracts,—4th ed.—*507; *Rouss* v. *King*, 74 S. C. 251.) After as before the change of name the Canchester Company continued in the same business and Canchester continued to have charge of its affairs. Plaintiff in error Cassidy continued as a stockholder and director and as secretary-treasurer. Plaintiff in error Alter continued as vice-president, stockholder and director. All the stockholders of the company, including plaintiffs in error, voted in favor of the change. Plaintiff in error Cassidy signed the certificate of change of name as secretary of the company. Under the reasoning of this court in *Chicago Title and Trust Co.* v. *Zinser*, 264 Ill. 31, plaintiffs in error entered into this contract of guaranty for the corporation with a knowledge of the statute which allowed a corporation to change its name and the objects for which it was originally formed. The guaranty contract, as we have stated, was clearly a continuing one. They agreed to guarantee all orders accepted by defendant in error under which it should manufacture and deliver goods to the Canchester Company. Plainly, under the authorities and under the facts in this case, the change in name of the Canchester Company in no way relieved the plaintiffs in error as to their liability under the guaranty contract.

It is further contended that error was committed in refusing to permit an amendment of the affidavit of merits,

which plaintiffs in error sought to amend, on motion, before the beginning of the trial. This case had been tried twice before. The first time a juror was withdrawn before verdict. In the second trial the verdict was against plaintiffs in error for the full amount of $5000 but a motion for new trial was granted. No reason was shown, at the time counsel attempted to amend the affidavit of merits, why the amendment had not been offered before. Section 1 of the chapter on amendments provides: "The court in which an action is pending shall have power to permit amendments in any process, pleading or proceeding in such action, either in form or substance, for the furtherance of justice, on such terms as shall be just, at any time before judgment rendered therein." An amendment essential to the proper presentation of a defense should be permitted. (*Shufeldt* v. *Fidelity Savings Bank,* 93 Ill. 597; *Drake* v. *Drake,* 83 id. 526.) The allowance of an amendment under this section is largely discretionary with the trial court, (*Misch* v. *McAlpine,* 78 Ill. 507; *Himrod Coal Co.* v. *Clark,* 197 id. 514;) but an amendment which would be of no benefit to the party seeking it need not be allowed. (*Cummins* v. *Holmes,* 109 Ill. 15.) The amended affidavit of merits followed closely the original affidavit, the chief difference being that in the first paragraph it set out a categorical denial of the manufacture and delivery of the articles covered by the guaranty sued upon. The point of counsel's argument on this question is that this categorical denial placed upon defendant in error the burden of proving such manufacture and delivery, regardless of the rules of the municipal court hereafter referred to. The original affidavit of merits denied that the guarantors were liable in any sum whatsoever, setting up that the indebtedness, if any, was due from the Canchester Company. As we have seen, the proof in the record shows that defendant in error had manufactured and delivered to the Canchester Company goods of the value of more than $5000, and for which the Can-

chester Company had not paid and for which the plaintiffs in error were liable. It therefore necessarily follows that plaintiffs in error were in no way injured by the ruling of the trial court on this question.

After the procuring of the appeal to the Appellate Court the judge of the municipal court ordered the clerk of the municipal court to certify the rules of that court to the Appellate Court. The Appellate Court held that the rules were properly before it. Under the decisions of this court the rules of the municipal court can only be taken cognizance of on an appeal when they are included in a bill of exceptions. (*Sixby* v. *Chicago City Railway Co.* 260 Ill. 478; *Mann* v. *Brown,* 263 id. 394; *Weil* v. *Federal Life Ins. Co.* 264 id. 425.) This is in accord with the general rule on this question. (18 Ency. of Pl. & Pr. 1260, and cases cited.) The Appellate Court was in error in holding that it could consider these rules thus certified. These rules provided, among other things, that every allegation of fact in every statement or claim, if not denied specifically or by necessary implication in the affidavit of defense, shall be taken to be admitted. The admission of these rules did not in any way change the issues in this case. Plaintiffs in error were in no way injured by the ruling of the Appellate Court with reference to the rules. If the decision of the Appellate Court be correct, the fact that the reasoning of the opinion is erroneous in no way affects the judgment when it is before us for consideration. *Pennsylvania Co.* v. *Versten,* 140 Ill. 637; *First Nat. Bank* v. *Miller,* 235 id. 135; *Kehl* v. *Abram,* 210 id. 218.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*