Ethel Dees and Ernest J. Dees, Appellees, v. Ted A. Moore, Appellant.

Gen. No. 10,271.

Opinion filed October 14, 1948. Released for·publication November 2, 1948.

JOHN H. PAGE and EDWARD S. FOLTZ, JR., both of Rockford, for appellant.

BURRELL & BURRELL, of Freeport, for appellees; DAVID M. BURRELL, of Freeport, of counsel.

MR. JUSTICE DOVE delivered the opinion of the court.

From judgments rendered by the circuit court of Stephenson county in favor of the plaintiff, Ethel Dees, for $7,000 and in favor of plaintiff, Ernest J. Dees, for $700, in accordance with verdicts of a jury in an action to recover for personal injuries and for property damage sustained by the plaintiffs in an automobile collision, the defendant, Ted A. Moore, appeals.

The complaint consisted of three counts, in each of which it was alleged that the automobile of the plaintiff, Ernest J. Dees, was, on August 17, 1947, being

driven by him in a westerly direction upon a gravel highway between Freeport and Dakota, Illinois; that he was accompanied by his wife, the plaintiff, Ethel Dees, who was riding in the front seat with him; that as they approached an intersection of a gravel highway running north and south, the defendant, Ted A. Moore was driving his automobile in a northerly direction along said north-south highway; that he drove negligently and carelessly and failed to keep a proper lookout and entered the intersection at a high and excessive rate of speed and failed to yield the right of way to the automobile being driven by the plaintiff. Each count alleged that each plaintiff was in the exercise of ordinary care for his and her own safety and each count asked judgment for the damages and injuries sustained.

The answer of the defendant denied every allegation of the complaint and the defendant filed a counterclaim against Ernest J. Dees, making the same charges of negligence against the counter-defendant as plaintiffs made against him and alleging that he was in the exercise of ordinary care for his own safety and seeking a judgment for the damages to his automobile which he sustained. There is no issue made about the pleadings and they need not be further considered.

The evidence discloses that the accident occurred on Sunday morning, August 17, 1947, in the country at the intersection of two graveled highways. The road running east and west upon which the plaintiffs were traveling, proceeding in a westerly direction, is commonly known as the Mennonite Church road. It was about 50 feet wide from fence to fence and the intersecting road running north and south upon which defendant was traveling in a northerly direction, was about 56 feet wide. The graveled portion of each road was approximately the width of one automobile and the roads intersected at right angles. There was a field of standing corn at the southeast corner of the

intersection extending easterly 600 or 700 feet and this corn was 4½ to 5 feet tall, the level of the field being several feet higher than the church road and the view to the south along the north and south road was obstructed until a traveler upon that road reached a point approximately 25 feet east of the graveled portion of the north and south road. A pasture was situated on the southwest corner of the intersection and a farm house was located east of the northeast corner. On the northwest corner, just south of the fence line there was a dirt bank 8 or 10 feet in height. For a distance of 150 feet as the north and south road approached the intersection, it was level, as was also the church road but the north and south road began to slope down grade about 150 feet south of the intersection.

The plaintiffs reside three miles east of the intersection and were, with their two children, who were in the rear seat, on their way to attend church in Freeport. The sun was shining and the roads dry. Plaintiff, Ernest J. Dees, was driving, proceeding at 20 to 25 miles per hour and when he reached a point 200 or 300 feet east of the intersection he slowed down to 15 miles per hour. Due to the physical conditions of the landscape, Mr. Dees or the other occupants of the car could not see to the south until his car was about 25 feet east of the east line of the intersection and when he reached that point he testified he looked in both directions and did not see any car in the north and south road, either to the north or south. At that point he had an unobstructed view to the south 150 feet to the point where the south road began to go down grade. The vision and hearing of both plaintiffs were good but neither heard defendant's automobile prior to the time of the collision and when their car reached the center of the intersection it was struck on the left door by the car driven by the defendant. For some little time before the collision and while plaintiffs' car

was some distance east of the intersection, Mrs. Dees became engaged in looking in her purse for her handkerchief for her children and continued to do so until the collision occurred. She testified that it was her opinion that her husband was driving 20 to 25 miles per hour until they were about 50 or 60 feet east of the intersection when he slowed down to less than 15 miles per hour. She testified that she drove an automobile and had for some years, that she had driven along this highway and across this intersection many times and three days previous had come to a complete stop before she crossed because of the obstructed view and because she considered it a dangerous intersection.

According to the testimony of the defendant he was driving at about 30 miles per hour until he reached a point 25 feet south of the intersection at which time he slowed down to 25 miles per hour. He testified that he looked to his left and right and when his front wheels had reached the south edge of the church road he saw plaintiff's automobile just west of the telephone pole located at the southeast corner of the intersection and in his opinion it was traveling between 30 and 35 miles per hour. The defendant applied his brakes and sounded his horn but it was too late. Nancy Moore, the wife of the defendant, was sitting in the front seat and according to her testimony she looked ahead and saw plaintiffs' automobile about even with the east line fence at the time the car in which she was riding had reached the south line fence and that both cars were proceeding at approximately the same rate of speed. Paul Anders and Paula Grattelo were riding in the rear seat of the Moore car and were accompanying the defendant and his wife to attend the fair in Milwaukee. Mr. Anders was riding on the right side of the rear seat and when the car in which he was riding had reached the south edge of the intersection he testified that he observed the plaintiffs' auto 5 or 6 feet east of the intersection, that it was proceeding

about 30 miles per hour and did not slacken its course, prior to the collision. Paula Grattelo testified that when the car in which she was riding reached a point ten feet from the south edge of the Mennonite Church road, she first saw the Dees' car which was then at the intersection; that before the car in which she was riding reached the intersection it was being driven about 30 miles per hour and when she first saw the Dees' car it was going about 35 miles per hour and did not change its speed or course up to the time of the collision. Jerome De Haven testified that he came to the scene of the accident shortly after the accident and had a conversation with the defendant and in that conversation defendant stated that he thought he was driving about 35 miles per hour when the collision occurred and that it was his fault. The defendant denied making these statements. The defendant, Paul Anders and Paula Grattelo each testified that at a conversation in the hospital following the collision, plaintiff, Ernest Dees, stated that no one was more at fault than the other. As a result of the collision both cars were quite extensively damaged. Plaintiffs' automobile turned over to its right and came to a stop on the dirt embankment 43 feet from the place of the impact and was headed west. Defendant's automobile was just east of it and headed southeast.

Counsel for appellant, while recognizing that ordinarily the question of contributory negligence is one of fact for the jury to pass upon, insists in this case, that an examination of this record can lead to but one conclusion and that is that both appellees were guilty of contributory negligence as a matter of law. In this connection counsel call our attention to the fact that the evidence discloses that Mrs. Dees had driven an automobile for six years, was familiar with this intersection and had driven along this road and across this intersection many times and was familiar with the physical conditions that then and there existed; that

it was a hazardous crossing and she recognized its dangers and three days before the accident had stopped her car before entering the intersection because she knew it was a dangerous corner. Her conduct, conclude counsel for appellant, shows her to be devoid of any care in her own behalf, because for some distance east of the intersection she commenced looking for a handkerchief in her purse and from that time on did not observe any car, gave no warning but continued to look for her handkerchief and did not know of the presence of the other car until the impact.

Counsel for appellant refer to *Morgan v. Rockford, B. & J. Ry. Co.*, 251 Ill. App. 127; *McDermott v. McKeown Transp. Co.*, 263 Ill. App. 325; *Ames v. Terminal Railroad Ass'n of St. Louis*, 332 Ill. App. 187 and cases therein cited. The factual situation here is distinguishable from the factual situations in those cases. The fact that appellees were approaching an intersection of two graveled highways is not analogous to cases which make it the duty of a driver of a car and his passenger to be on the lookout for approaching trains at a known dangerous railroad crossing. *St. Clair Nat. Bank of Belleville v. Monaghan*, 256 Ill. App. 471. Appellees here had a right to assume that appellant, as he approached this intersection, would comply with the statutory requirement and yield the right of way. Since the jury found the issues for the plaintiffs, we must assume that they adopted plaintiffs' version of the cause of the accident. (*Smith v. Courtney*, 281 Ill. App. 530, 536) and that is that the driver of appellees' car was a competent driver, familiar with the intersection and when he had arrived at a point 20 feet east of the intersection he was driving his car at a reasonable rate of speed, that he looked and no car was approaching from either direction on the north-south road and that in proceeding into the intersection and up to the time of the collision, the conduct of Mr. Dees, the driver, was consistent with that of a man of ordinary prudence under like circumstances.

 In *Clarke v. Connecticut Co.,* 83 Conn. 219 it was said: "What conduct on the passenger's part is necessary to comply with his duty must depend upon all the circumstances, one of which is that he is merely a passenger having no control over the management of the vehicle in which he is being transported. Manifestly, the conduct which reasonable care requires of such a passenger will not ordinarily, if in any case, be the same as that which it would require of the driver. While the standard of duty is the same, the conduct required to fulfil that duty is ordinarily different because their circumstances are different." In *Rhoden v. Peoria Creamery Co.,* 278 Ill. App. 452, this court, after setting forth this quotation went on to say: "A passenger riding as an invited guest in an automobile is only required to exercise such care as the exigencies of the situation require, in other words, such guest is bound to use such care and caution as a person situated in like circumstances would exercise (*Fredericks v. Chicago Rys. Co.,* 208 Ill. App. 172) and the fact that defendant in error did not do or say anything as the car approached the truck did not, in our opinion, show, as a matter of law, that she was not in the exercise of ordinary care for her own safety. The question whether she did or failed to do all that a reasonable person in like circumstances would have done was properly submitted to the jury by the trial court." In our opinion the trial court did not err in the instant case, in refusing the peremptory instructions offered by appellant at the close of all the evidence or in refusing to render judgment for appellant notwithstanding the verdicts.

The court gave to the jury the following instruction: "The court instructs the jury that the negligence, if any, of the driver of the automobile in which the plaintiff, Ethel Dees, was riding as a passenger cannot be imputed to the plaintiff, Ethel Dees, in this case, and if you believe that the plaintiff, Ethel Dees, at the time and place in question was in the exercise of reasonable

care and caution for her own safety and that the defendant was negligent and that the negligence of defendant, if any, was the proximate cause of the injury, if any, to the plaintiff, Ethel Dees, then and in that event you should find the defendant guilty as to the plaintiff, Ethel Dees.''

The objection to this instruction is that it is not limited to the negligence charged but permits the jury to wander afield and render a verdict against the defendant for any act which the jury might fancy to be an act of negligence. The complaint herein not only charged the defendant with general negligence but specifically it charged him with a failure to keep a proper lookout, with entering the intersection at an excessive speed and failed to yield the right of way to the plaintiffs. This instruction directs a verdict for the plaintiff, Ethel Dees. It does not confine the jury to the evidence or to the negligence charged. In *Herring v. Chicago & A. R. Co.,* 299 Ill. 214, the court in speaking of a somewhat similar instruction said: (p. 217) ''An instruction of this character permits the jury to wander afield and return a verdict against a defendant for what they might fancy to be an act of negligence though the act so considered by them to be negligent was one which the law would not recognize as actionable. In a case where the evidence is as conflicting as it is in this case, the fact that the law may be correctly stated in other instructions, will not obviate the error committed in giving a bad instruction. In view of the record in this case we must hold that the giving of this instruction was reversible error.''

The abstract, prepared by counsel for appellant, sets forth the foregoing instruction and two others of which no complaint is made in the argument. It is insisted by counsel for appellees that the record discloses that there were other instructions given and that inasmuch as they were not found in the abstract, the question whether this instruction is erroneous is

not preserved for review. This instruction directed a verdict and regardless of whether other given instructions correctly stated the law or not, we feel that the record does present this question and that the giving of this instruction necessitates a reversal of these judgments.

It is also insisted that the judgments are excessive, particularly the amount awarded Mrs. Dees. Inasmuch as the issues must be submitted to another jury there is no necessity for this court to pass upon this question.

For the error in giving this instruction the judgments of the trial court are reversed and the cause remanded.

*Reversed and remanded.*