**Virginia Pennington, Administrator of the Estate of Ernest Pennington, Deceased, Plaintiff-Appellee, v. Donald H. McLean, Jr., Defendant-Appellant.**

### Gen. No. 11,117.

Second District, First Division.

August 5, 1958.

Released for publication August 22, 1958.

Leren & Burek, of Wheaton (Alexander J. Burek, of counsel) for defendant-appellant.

Corrigan, Mackay & Fitzgerald, of Wheaton (William E. Corrigan, of counsel) for plaintiff-appellee.

PRESIDING JUSTICE DOVE delivered the opinion of the court.

Virginia Pennington, as administrator of the estate of her deceased husband, Ernest Pennington, brought this action against Donald H. McLean, Jr., to recover damages for the alleged wrongful death of her intestate which was occasioned as a result of a collision of the truck which plaintiff's intestate was driving and an automobile driven by the defendant.

The complaint consisted of two counts. At the conclusion of all the evidence, the court directed a verdict in favor of the defendant on the wilful and wanton

count. The other count of the complaint charged that the defendant was negligent in that (a) he failed to keep his vehicle under control; (b) he failed to keep a good and proper lookout for other vehicles; (c) he failed to yield the right of way to plaintiff's intestate; (d) he operated his vehicle at a high and dangerous rate of speed and (e) he failed to sound his horn or do anything whatever to avoid the collision when danger was imminent and known to the defendant.

The answer of the defendant denied all charges of negligence and denied that plaintiff's intestate was in the exercise of due care for his own safety just before and at the time of the collision and averred that the collision occurred as a result of the careless and negligent operation of the truck which plaintiff's intestate was driving. The issues made by this count and the answer thereto were submitted to a jury resulting in a verdict and judgment in favor of the plaintiff and against the defendant for $22,500. Post trial motions for judgment notwithstanding the verdict and in the alternative for a new trial were denied and defendant appeals.

The record discloses that at the time of his death decedent was forty-three years of age and was survived by his wife and two sons, aged nine and six, respectively. His weekly earnings were between seventy-five and eighty dollars and on November 9, 1955, about six o'clock in the evening, he was driving a Sears-Roebuck pick-up delivery truck in a southerly direction across the two west-bound traffic lanes of route 64, also known as North Avenue outside the village of Glen Ellyn in a sparsely built up section of DuPage County.

Route 64 is a four lane highway which runs in an easterly and westerly direction with a center line dividing the east and west traffic lanes, and the east and west traffic lanes are divided by a center line into

318

outside and inside lanes. It is inferred from the evidence that decedent entered Route 64 on the north side thereof from Richmond Street which is an improved dirt highway but which does not continue south after it reaches Route 64. It is a dead-end Street and there is a stop sign at the customary distance north of the north edge of Route 64. If projected south across Route 64, Richmond Street would lead into the curbing directly in front of what is known as Ki's Restaurant. After reaching Route 64 from Richmond Street, in order to proceed upon a highway in a southerly direction, it is necessary to drive west on Route 64 a distance of about 115 to 120 feet and then make a left turn to the south on a dirt or gravel road known as Goodrich Avenue.

Approximately 600 feet west of the center line of Richmond Street where it intersects Route 64 is the crest of a hill, so Route 64 as it proceeds easterly traversing this distance and for several hundred feet east of the Richmond Street intersection is down grade.

Michael Fitzner testified that he lived in Wheaton and was engaged in the greenhouse business; that he was driving east on Route 64 on the evening of November 9, 1955; that the west-bound traffic was very heavy but there was very little east-bound traffic; that when he was on the crest of the hill some 150 or 200 yards west of the Richmond Street intersection he first saw the truck being driven by decedent and at that time the truck was crossing the west-bound traffic lanes of Route 64.

As abstracted, this witness then testified: "The front of the truck was close to the center of North Avenue (Route 64). It was moving very slow and moving at an angle southwest. I saw the accident. I saw the other car involved in the collision when he was trying to get around the truck. I can't recall exactly just where it was when I first saw it but it was be-

tween the two south lanes or the two east-bound lanes. I can't say how far apart the car and this truck was or how close they were together. I didn't pay much attention. I just saw that the car was trying to get around the truck. When I saw him (the defendant) he was just about on top of the truck and that was when I saw the truck crossing the east-bound lanes. I didn't pay any attention to the other cars. I was looking out for my driving because I saw the truck ahead of me. I don't know and I don't remember whether there was other traffic in the west-bound lanes when I first saw the truck. When the car and truck came together the front of the truck was in the outside lane of the east-bound traffic. The right front corner of the car came in contact with the right rear of the truck. When I saw the car hit the truck the corner of the truck that he hit was just about in the center of the highway dividing the east and west-bound lanes."

This witness further testified that after the accident, "the front of the truck was about half on the highway and half off of the highway on the south side of the pavement facing a little to the northwest and that the defendant's car was between the two east-bound lanes some 15 to 20 feet east of the truck and approximately in the center of the two east-bound traffic lanes."

The only other occurrence witness was the defendant. He was called by the plaintiff for cross-examination under Section 60 of the Practice Act and testified that he was employed by W. G. Parrish, Incorporated at Geneva, Illinois, and that his work was general machine shop work; that upon the evening in question he was on his way home and was alone in his car and was driving in an easterly direction on North Avenue or Route 64; that at the intersection of Main Street and North Avenue there were stop and go lights; that

this intersection was approximately one-third of a mile west of the point where his car collided with the truck driven by plaintiff's intestate; that as he proceeded through the Main Street intersection he was driving about 35 miles per hour travelling in the inner east-bound traffic lane; that he did not stop at the intersection as the lights had turned to green prior to the time he arrived at the intersection; that as he proceeded east there was a hill and after he had passed the crest of the hill and had travelled about 100 yards east downgrade he changed the course of his car to the outside lane of traffic and increased his speed to 50 or 55 miles per hour; that his driving lights were on and would cast a beam approximately 100 yards in which he could pick up an object; that the distance from the top of the hill to the place where the accident happened was about 400 feet; that as he proceeded east in the outside lane he did not recall that there were any vehicles travelling east on the inner east-bound lane to the left of his car or that there were any other cars in the immediate vicinity going east at the time. He further testified when called as a witness for plaintiff under Section 60 of the Practice Act that he did not know how fast his car was going at the time of the accident, that he did not sound his horn and did not see the truck which he hit "until after the accident had been fully accomplished."

When called as a witness in his own behalf, defendant testified that he left his place of employment in Geneva about 5:30 p. m. and had traveled between thirteen and fifteen miles to the place of the accident; that the weather was cool, the pavement dry and it was dark; that North Avenue or Route 64 is a black-top pavement divided into four lanes, two east-bound and two west-bound with a double yellow center line; that the intersection of Main Street and Route 64 is located at the bottom of a hill; that the west-bound

321

traffic was heavy, but no traffic was ahead of him and when he came to the top or crest of the hill after passing through the Main Street intersection, he was in the outer east-bound traffic lane traveling approximately 50 or 55 miles per hour; that he first saw the truck which plaintiff's intestate was driving when he was passing Goodrich Avenue and that he was then about one hundred fifty feet west of the point of impact; that at that time the truck driven by decedent was in both of the west-bound lanes of traffic, the front of the truck facing in a southerly direction, approximately in the middle of the four traffic lanes.

In response to his counsel's question as to what occurred after defendant first saw the truck, defendant testified: "I took my foot off the gas pedal and started to apply the brakes and I saw that the truck was proceeding south to cross Route 64, then I turned my wheel and still applying my brakes tried to avoid the truck by going behind it. The right front of my car and the truck's right rear came together." In reply to his counsel's inquiry as to the exact location of the truck on the highway at the time of the impact, defendant stated: "The position of the truck was in both east-bound lanes, approximately 90% of the outer lane and approximately two-thirds of the inner lane. At the moment of impact my car was approximately two-thirds in the inner east-bound lane and approximately one-third across and over the center lines."

The record shows that after the impact defendant's car stopped in the inner east-bound lane facing southeasterly twenty-five to thirty feet from the truck, which was facing in a northwesterly direction, partly in the east-bound traffic lane and partly off the highway. The lights on the overturned truck were burning after the accident but the lights on defendant's car were not.

322

Counsel for appellee directs our attention to the fact that when called as an adverse witness under Section 60 of the Practice Act [Ill. Rev. Stats. 1957, ch. 110, § 60], defendant testified that he did not know how fast he was going at the time of the accident and did not see the truck with which he collided until after the accident had been accomplished. When he testified in his own behalf his testimony was that as he proceeded east, shortly prior to the collision, he was going fifty or fifty-five miles per hour and that he did see the truck when he was about one hundred fifty feet west of the point of impact. We have examined the record. If defendant did not fully understand the question propounded to him on cross-examination when called under Section 60 of the Practice Act as to the location of his car at the time when he first saw decedent's truck, he should have been permitted to correct his answer, but the trial court sustained objections to questions propounded to him by his counsel for that purpose. Other than this conflict, however, in defendant's own testimony, the evidence found in this record is not conflicting. His testimony to the effect that he was traveling fifty or fifty-five miles per hour shortly prior to the collision as he proceeded east is not inconsistent with his statement that he did not know just how fast he was going at the time his car and the truck collided.

Several pictures and a plat were offered and admitted in evidence which disclose the condition of the truck after the accident and also depict the location, appearance and topography of the highway involved and the surrounding territory. This plat and profile shows, at fifty-foot intervals, the elevation of the center line of Route 64 and discloses that the crest of the hill was six hundred feet west of the center of Richmond Avenue.

The foregoing is a fair resume of the evidence found in this record and counsel for appellant insists that it discloses that decedent was, as a matter of law, guilty of contributory negligence in not yielding the right of way to appellant's car and therefore the trial court erred in not directing a verdict for defendant at the close of all the evidence or in not granting his post-trial motion for judgment notwithstanding the verdict.

The complaint alleged that plaintiff's intestate, on November 9, 1955, was driving a motor truck in a southerly direction on Grace or Richmond Street near its intersection with North Avenue or Route 64; that defendant was driving his car in an easterly direction on North Avenue at or near this intersection and as a direct and proximate result of defendant's acts or omissions, herein enumerated, the automobile driven by the defendant struck the truck driven by plaintiff's intestate. The answer of the defendant admitted that he was driving his automobile in an easterly direction upon North Avenue upon the occasion in question, but denied it was near the Richmond Street intersection.

From what point decedent entered Route 64 on North Avenue does not appear from the evidence, but it may be assumed that he had proceeded south on Richmond Street, which had a stop sign protecting the traffic on North Avenue. If projected across North Avenue, the evidence is that Richmond Street would extend to a curbing in front of Ki's Restaurant. The gravel road leading south, known as Goodrich Avenue, is one hundred fifteen or one hundred twenty feet west of the Richmond Street intersection so the Richmond Street and North Avenue intersection is a "T" intersection. At the time the truck, which plaintiff's intestate, was driving, was first seen by anyone, so far as this record discloses, it had already entered Route 64. Whether he intended to stop at Ki's Restaurant or

proceed south on Goodrich Avenue does not appear. Fitzner testified that he·saw the truck after he had passed the crest of the hill and was proceeding eastward in his proper lane of traffic on Route 64 and that the truck was then in front of and east of the car Fitzner was driving and in front of the car appellant was driving and the distance between Fitzner's car and the truck was "about 150 or 200 yards and the other car (that is, defendant's car) was about the same distance away." Decedent, in his truck, was not traveling westward in either of the west-bound traffic lanes; but, according to Fitzner's evidence, he was proceeding in a southwesterly direction and the front end of the truck was at that time at the yellow lines which marked the south edge of the two west-bound traffic lanes and which marked the north edge of the two east-bound traffic lanes. When decedent arrived at this point his truck was moving slowly and proceeded without stopping into the innermost east-bound traffic lane and continued into the outside east-bound traffic lane and directly across the path of appellant's car. Mr. Fitzner further testified that he could not recall just where defendant's car was when he first saw it, but that it was in its proper traffic lane and at that time the truck driven by decedent had left the two west-bound traffic lanes and was "crossing the two east-bound lanes" and this witness observed that defendant's car was trying to swing around the truck but its right front bumper hit the right rear end of the truck.

In order that this judgment stand it must affirmatively appear from the record that at and immediately before the collision plaintiff's intestate was not guilty of any negligence which proximately contributed to cause this accident, that defendant was guilty of some negligent act or omission charged in the complaint and that the negligence of the defendant

325

was the proximate cause of, or proximately contributed to cause, the death of plaintiff's intestate. (Illinois Cent. R. Co. v. Oswald, 338 Ill. 270, 273.)

There is no evidence in this record what decedent did prior to the time he entered Route 64. The evidence is that his truck was moving and crossing the west-bound lanes of traffic and, when first observed, the front end of his truck had reached the lines dividing the east and west traffic lanes. The truck plaintiff's intestate was driving continued, without stopping, into the east-bound traffic lanes. Mr. Fitzner, then about six hundred feet to the west, observed plaintiff's intestate's truck at that distance and at that time defendant's car was the same distance away. There was nothing to obscure the view of plaintiff's intestate and had he looked he would have not only been able to see Mr. Fitzner, but also defendant's car, both approaching in an easterly direction on a preferred highway and each having the right of way.

In Hering v. Hilton, 12 Ill.2d 559, 147 N.E.2d 311, it appeared that the plaintiff was driving an automobile in an easterly direction at a speed of fifty-five to sixty miles per hour on a State highway in a country area west of Bushnell. This paved highway was intersected by a north and south gravel road. Plaintiff testified that about noon on June 4, 1952, when she was about one hundred fifty feet from the intersection she observed defendant's truck on the south side of the gravel road about two feet south of the concrete highway; that defendant was not looking in her direction; that she blew her car horn, but the driver of the truck increased its speed and when plaintiff's car reached the center of the intersection the left front side of her car collided into the middle of the truck which kept moving in a northerly direction. The defendant testified he had stopped his truck at the stop sign which was on the east side of the gravel road some thirty-one

326

feet south of the State highway; that he waited for a truck, coming from the east, to turn in front of him and then looked to the west and saw plaintiff's automobile approaching at a distance of about seventy-five to eighty rods. Believing that he had sufficient time to cross, he proceeded onto the intersection and was practically across the highway and some seven or eight feet onto the gravel road to the north with only the rear wheels of the truck on the concrete at the time of the collision.

The original complaint in the Hering case consisted of a single count charging the defendant with negligence. At the conclusion of plaintiff's evidence the defendant filed an affirmative defense alleging that his work in maintaining the public roads of Bushnell Township relieved him from liability for negligence and introduced evidence in support thereof. At the close of all the evidence the court allowed defendant's motion for a directed verdict on the basis of the affirmative defense. Thereupon plaintiff filed an additional count charging defendant with wilful and wanton misconduct. No further evidence was introduced and the jury returned a verdict in favor of the plaintiff and against the defendant for $7,000, upon which judgment was rendered. The appellate court held as a matter of law that the defendant was not guilty of wilful and wanton conduct and reversed the judgment. The supreme court held otherwise and reversed the judgment of the Appellate Court.

In the course of its opinion in the Hering case the supreme court said that although the driver of the truck stopped at the stop sign and looked both ways with an unobstructed view, he nevertheless proceeded ahead onto the intersection, after noting plaintiff's car approaching from the west, and without looking again in that direction until the moment of the impact; that according to the plaintiff's testimony, defendant failed

to heed the warning of her horn, which she blew when her car was one hundred fifty feet from the intersection and when defendant's truck was still about two feet from the south edge of the highway, but merely accelerated his speed so that the cars collided in about the center of the intersection.

The court then stated that the obligation of the driver of a vehicle approaching a preferred highway has been set forth in Ritter v. Nieman, 329 Ill. App. 163, and quoted from that case (p. 171): "What is the purpose of a stop sign? Certainly it does not signify that a motorist should stop and then blindly proceed through a protected intersection without determining that he can do so with reasonable safety. The operator of a motor vehicle, when he stops at a preferred highway, should ascertain if he can proceed safely across such highway. If he cannot, he should not enter it. Merely stopping some place near a stop sign does not necessarily discharge one's duty. There is no virtue in stopping at a place when one cannot see. A stop sign is a challenge to motorists to stop at a point where, by the use of one's faculties, one can definitely ascertain if he can safely proceed into the protected thoroughfare."

In the Hering case the defendant argued that he thought he had time to cross the intersection and that his action in driving ahead amounted only to an error of judgment rather than to wilful and wanton misconduct. In answering this argument the court said (p. 564): "With this we cannot agree. Labelling the conduct 'an error of judgment' does not free it from the taint of wilful and wanton misconduct, but merely begs the question, for practically all such collisions could be attributed to errors of judgment and the query in each case is whether such error of judgment was in disregard of dangers which should have been apparent to a reasonable man. It is apparent that de-

328

fendant is guilty of another error of judgment in his estimate that plaintiff's car was 1,300 feet away when he was ready to proceed across the pavement. Making the generous assumption that defendant's truck travelled 50 feet before the collision, the plaintiff's car must have been driven at a rate of speed 26 times greater for the two vehicles to have collided. As hereinbefore noted, defendant need not have intended that any harm should ensue, nor actually know for sure that there would be a collision; it is sufficient if he had notice which would alert a reasonable man that substantial damage was involved, and that he failed to take reasonable precautions under the circumstances. Stephens v. Weigel, 336 Ill. App. 36, 82 N.E.2d 697.

"It is evident that the stop sign alerted defendant to the dangers of the intersecting highway, and imposed upon him a duty of waiting until he could traverse the preferred highway with safety. This the defendant failed to do. After his initial stop, he failed to keep a lookout even though he knew that a vehicle was approaching from the west and he entered the intersection without again looking in that direction to ascertain if it was safe to proceed, and without heeding the warning of plaintiff's car horn. Inasmuch as such conduct plainly involved an unreasonable risk with a high probability of danger, of which defendant should have had knowledge, the wilful and wanton count could have been properly submitted to the jury."

Tucker v. New York, Chicago and St. Louis R. Co., 12 Ill.2d 532, 147 N.E.2d 376, was an action to recover for personal injuries sustained by the plaintiff when the truck he was driving collided with a freight train at a grade crossing. In the course of its opinion the supreme court in affirming the judgment of the Appellate Court which reversed, without remanding, the judgment of the trial court in favor of the plaintiff held that the only conclusion to be drawn from the

evidence was that the plaintiff was guilty of contributory negligence as a matter of law. In the course of its opinion the court stated that it is well settled that railroad crossings are dangerous places and that in crossing them a person must approach the track with a degree of care proportionate to the known danger and that the law requires one to make diligent use of his senses of sight and hearing and exercise care commensurate with the danger to be anticipated. The court then went on to say that while there may be facts, such as obstructions to view or distractions, that might mislead a traveler without his fault or excuse a failure to look or listen, the record in the Tucker case disclosed no evidence or legitimate inference that could be drawn therefrom which would either excuse plaintiff's failure to look or convince a reasonable mind that he looked but did not see.

In Dees v. Moore, 335 Ill. App. 318, an automobile traveling in a northerly direction collided with another automobile traveling in a westerly direction at the intersection of the two gravel roads. We are not unmindful that this court said in that case (p. 324) that the factual situation was not analogous to the factual situation in cases which held that it was the duty of a driver of an automobile to be on the lookout for approaching trains at a known dangerous railroad crossing. The differences, of course, are that railroad crossings are known to be dangerous and that trains move on a fixed track.

Our modern preferential, highly traveled, four lane highways are about as dangerous to a traveler who seeks to cross them as any railroad crossing and are known to be so. Certainly the law requires a traveler thereon to use his senses of sight and hearing and exercise care commensurate with the danger to be anticipated. Here, plaintiff's intestate left the two west-bound traffic lanes and proceeded into the east-bound

traffic lanes which he must have known was a place of danger. What he did to apprise himself of the danger which was so apparent does not appear from the evidence. Although it was dark, the lights upon his truck were burning and the only evidence is that the lights on defendant's car were burning. If he looked to his right, the only direction from which traffic was approaching, he saw defendant's car proceeding toward him in its proper traffic lane. If, when he looked, he saw cars approaching from the west going east and undertook to cross under the belief that he could do so safely, his conduct was, as said in the Hering case, supra, in disregard of the dangers which should have been apparent to a reasonable man. If he did not look relying upon the assumption that the highway was open and free to travel, he was not only mistaken but certainly careless and indifferent to consequences. (Dee v. City of Peru, 343 Ill. 36, 41, 42.)

■ The traffic, according to the evidence, upon the west-bound traffic lanes upon this preferred highway, upon the evening in question, was very heavy. Upon the east-bound lanes there was not as much traffic. The entire four lanes, however, were protected from traffic entering from the north or south and that fact should have alerted defendant to the danger of proceeding as he did and challenged him to definitely ascertain whether he could safely proceed into or across this protected thoroughfare. Whether he looked and did not see or whether he did not look or whether, in the position which he placed himself, he became confused is not revealed by the evidence found in this record, but what happened does appear. He failed to ascertain that it was safe to proceed and as said in the Hering case, supra, his conduct plainly involved an unreasonable risk with a high probability of danger of which he should have had knowledge. Decedent must have known that if he placed his truck in the

331

position it was just before and when the collision occurred it would be a miracle if he escaped injury or death. Even before entering the west-bound traffic lanes of this four lane highway it was his duty to ascertain whether any other vehicle was approaching on these lanes to which he should yield the right of way and when he entered the east-bound traffic lanes and sought to cross those two lanes he had a like duty. Under the uncontradicted facts appearing in this record, decedent's conduct bars a recovery by his personal representative. (Dee v. City of Peru, 343 Ill. 36, 41.)

While the factual situation here is distinguishable from the factual situations in the Hering and Tucker cases, it is a reasonable conclusion that, if the conduct of the defendant in the Hering case would have justified a jury in finding him guilty of wilful and wanton misconduct, or if the only reasonable conclusion to be drawn from the evidence in the Tucker case was that Tucker was guilty of contributory negligence which barred a recovery, then the only conclusion reasonably to be drawn from the undisputed facts in this record is that plaintiff's intestate was guilty of contributory negligence as a matter of law.

Having concluded that plaintiff's intestate was not, as a matter law, in the exercise of due care for his own safety just before and at the time of the collision in question, the judgment of the Circuit Court of DuPage County must be reversed.

Judgment reversed.

SPIVEY, J., concurs.

McNEAL, J., dissenting.

I regret that I cannot agree that the only conclusion to be drawn in this case is that plaintiff's intestate was

guilty of contributory negligence as a matter of law, or that the judgment should be reversed.

Under the circumstances evident here, the conduct of intestate, Pennington, is not comparable with that of the defendant in the Hering case. It is true that the defendant in that case approached a preferred highway from a gravel road and here intestate probably entered the highway from a blacktop paving, but there the similarity ceases. In that case the collision occurred in daylight, the defendant testified that he saw plaintiff's car approaching the intersection at an estimated distance of 1,300 feet, and that he proceeded across the intersection without again looking in the direction of plaintiff's car to ascertain if it was safe to proceed and without heeding the warning of plaintiff's horn. Upon this evidence the Court concluded that the wilful and wanton count could have been submitted to the jury. Here the collision occurred in the nighttime, defendant sounded no horn, and there is no evidence showing that plaintiff's intestate knew or should have known of the approach of defendant's car before the impact.

In addition to the facts set forth in the opinion, the abstract shows that as defendant was proceeding toward the Main Street intersection he was going about 65 miles an hour; both the defendant and Michael Fitzner passed cars stopped or waiting for the light to change at that intersection; Fitzner proceeded east on the inner lane at a speed of 35 to 40 miles an hour; and when defendant first saw the truck driven by Pennington, defendant was traveling in the outer lane at approximately 55 miles an hour. On the previous day of the trial when he was called under section 60, in addition to his testimony that he didn't see the truck until after the accident had been fully accomplished, defendant also stated that he didn't know how fast his car was going at the time of the collision, and that after

the accident his car slid to a stop 25 or 30 feet east of the truck.

At a speed of 55 miles an hour, defendant was traveling about 80 feet a second. He said that the distance from the top of the hill to the place of the accident was about 400 feet. Accordingly, he would have covered the portion of the highway visible from the point where Pennington entered the highway in about five seconds. However, considering the evidence and its intendments most favorable to plaintiff's cause of action, the jury could have concluded that defendant was driving his car much faster than 55 miles an hour. Before he reached Main Street defendant's speed was 65 miles an hour. Fitzner was traveling on the inner lane at 35 to 40 miles an hour, so defendant must have followed Fitzner through the traffic at the Main Street intersection, pulled into the outer lane, and covered the third of a mile from Main Street to the intersection where the collision occurred, while Fitzner was traveling about half that distance. Defendant applied his brakes for almost 150 feet and the pavement was dry, yet the impact of his car drove the rear half of the truck completely off the highway and turned the truck around so that it was facing northwest, and the momentum was so great that defendant's car slid 30 feet beyond the truck. In view of defendant's original statement that he did not know his speed and did not see the truck, and his overnight change to testimony that he was traveling 55 miles an hour and saw the truck when he was about 150 feet west of the point of impact, and considering defendant's inability to stop or swerve his car in 150 feet, the very slow speed of the truck, and the force of the impact, the jury was fully warranted in concluding that defendant was traveling much faster than 55 miles an hour, and that the time afforded intestate to see defendant's car after it came over the hill was considerably less than five seconds.

334

According to the photographs in the additional Abstract, the truck was a large vehicle with the upper half painted white. Fitzner saw the truck 450 to 600 feet away, and at the speed he was traveling, he had no difficulty in avoiding a collision. Defendant either didn't see the truck or first saw it at 150 feet from the point of impact. He said his lights cast a beam of about 300 feet, but his failure to see the truck, as did Fitzner, together with the fact that none of defendant's lights was on after the accident, and the significant fact that defendant's car apparently wasn't visible to Fitzner until defendant "was just about on top of the truck," afforded a reasonable basis upon which the jury might have properly concluded that defendant's lights were not on as he drove over the hill and toward the scene of the collision, and that by driving without lights, defendant entirely eliminated the only means by which the approach of his car might have been observed by Pennington.

Plaintiff's intestate moved across the west-bound lanes where the traffic was heavy, very slow,—indicating his care and caution on entering and proceeding in the intersection. He had no affirmative duty to keep out of defendant's path. The right of way and stop sign statutes gave defendant no absolute right of way over intestate without regard to circumstances, the distance their vehicles were from the intersection, or the speed at which the vehicles were traveling. Anderson v. Middleton, 350 Ill. App. 59, 63; Bessette v. Loevy, 11 Ill.App.2d 482, 486. According to defendant's revised testimony, the truck was at least halfway into the intersection when defendant was 150 feet away. At this point defendant was not approaching so closely as to constitute an immediate hazard, if defendant had been traveling at a reasonable speed and with proper lights. Photo exhibit 2 shows that defendant's car struck the rear two or three feet of the truck, so in-

testate must have been nearly through the intersection when defendant entered. Although Fitzner said the truck was moving southwest, defendant who was ahead of Fitzner and closer to the truck, said it was proceeding south. It was for the jury to say whether the truck was headed south or southwest, and to determine whether intestate intended to angle across the parking lot in front of Ki's Restaurant towards Goodrich Avenue or to turn east on Route 64. If intestate was in the process of turning east on Route 64, defendant's view of the truck directly ahead, was much better than Pennington's view of defendant's car as it approached towards intestate's right or rear. In either event, I think there was some evidence upon which the jury could have concluded that Pennington had the right of way, and that it was defendant's duty to yield the way to intestate.

The question of intestate's contributory negligence was pre-eminently a fact for the consideration of a jury. Blumb v. Getz, 366 Ill. 273, 277. The question of due care on the part of the plaintiff's intestate is always a question of fact to be submitted to a jury whenever there is any evidence in the record which, with any legitimate inference that may reasonably and legally be drawn therefrom, tends to show the exercise of due care on the part of the deceased. Thomas v. Buchanan, 357 Ill. 270, 278. The exercise of due care need not be established by direct and positive testimony but may be inferred from all the facts and circumstances shown to exist prior to and at the time of the collision. Ruspantini v. Steffek, 414. Ill. 70, 74; Thomas v. Smith, 11 Ill.App.2d 310, 316; Campbell v. Ragel, 7 Ill.App.2d 301, 304. Due care becomes a question of law only when the evidence is so clearly insufficient to establish due care that all reasonable minds must reach the conclusion that there was contributory negligence. McManaman v. Johns-Manville Products

Corp., 400 Ill. 423, 430; Ziraldo v. W. J. Lynch Co., 365 Ill. 197, 199.

In Tucker v. New York, Chicago & St. Louis R. Co., 147 N.E.2d 376, cited in the opinion, defendant's 48-car freight train ran into Tucker's truck at 8:00 A. M., when the visibility was about two miles. The Court found that Tucker had a clear and unobstructed view of any approaching train for one fourth of a mile from the crossing, and concluded that there was no evidence that would convince a reasonable mind that he looked but did not see the train, and that he was guilty of contributory negligence as a matter of law. A person about to cross a railroad track ought to anticipate the movement of trains which cannot be stopped in a short distance or swerve from the railway to avoid a collision. I cannot agree that the respective duties and rights of way of Pennington and the defendant at the highway intersection here are comparable with those of Tucker and the defendant railroad at the crossing involved in the case cited.

In my opinion the Hering and Tucker cases are not applicable to the instant case; there is evidence in the record upon which the jury could have found that Pennington was in the exercise of due care and that defendant's speed or failure to keep a proper lookout was the proximate cause of intestate's death; there are no errors in the record requiring a reversal or a new trial; and the verdict and judgment should be affirmed. Therefore, I respectfully dissent.