Charlotte Pantlen, Administrator of the Estate of Claude Pantlen, Deceased, Plaintiff-Appellee, v. Roy J. Gottschalk, Defendant-Appellant.

Gen. No. 10,231.

Third District.

April 14, 1959.

Released for publication April 30, 1959.

William J. Bach, of Bloomington (Frank M. Brady, of counsel) for Roy Gottschalk, defendant-appellant.

Costigan, Wollrab & Yoder, of Bloomington, for plaintiff-appellee.

JUDGE REYNOLDS delivered the opinion of the court.

This cause arises out of the death of Claude Pantlen, in a collision between his automobile and one driven by the defendant Roy J. Gottschalk, at a rural intersection of two black-topped roads, approximately two and one-half miles east of Stanford, Illinois, in McLean County. The accident occurred at approximately 11:30 a. m. on July 6, 1957. The weather was clear, the roads were dry and visibility was good. The decedent Claude Pantlen, a rural mail carrier, on his rounds as such carrier, was driving his car southwardly approaching the intersection, on the north-south road. The defendant was driving his car westwardly approaching the intersection, on the east-west road. The two roads are each approximately 18 feet in width and there is a rise to the east in the east-west road approximately 400 feet from the intersection and a rise to the north in the north-south road approximately 300 feet from the intersection. There are no stop signs or warning devices at the intersection. The evidence of an eyewitness to the collision who saw both cars before the collision puts the speed of the Pantlen car at 50 miles per hour and that of the defendant at 65 miles per hour. It does not appear from any evidence in the record that either driver saw the car of the other before the collision. There is no evidence of either applying the brakes, there were no skid marks on the road or any evidence that either driver swerved or attempted to swerve to avoid the collision. The eyewitness, Everett Burden, saw the two cars when he was about 500 feet west of the intersection, traveling toward the intersection. He lost sight of the Pantlen car until just at the moment of the impact, but continued to see the Gottschalk car. The field at the northeast corner of the intersection was planted in alfalfa which was not high enough to limit the vision of the two drivers as to

165

cars approaching from the east or the north, but there was an intermittent growth of weeds about four feet high on both sides of this field, bordering the two roads. This field at the northeast corner would be the field over which Pantlen and Gottschalk could have observed the approach of the car of the other.

Suit was instituted by Charlotte Pantlen, the widow, as Administrator of the Estate of Claude Pantlen, Deceased, against the defendant. The jury returned a verdict in favor of the plaintiff administrator fixing damages in the amount of $19,958. Judgment on the verdict was entered and the defendant appeals to this court.

The defendant raises two points in his appeal. 1. That the plaintiff's intestate was guilty of contributory negligence as a matter of law, and that the plaintiff had failed to meet the affirmative burden of showing the plaintiff's intestate was free from negligence that contributed to his own injury. 2. That the trial court erred in giving Plaintiff's Instruction No. 1.

Six witnesses testified in behalf of the plaintiff. Claude Baker, a Sergeant of the Illinois State Police, testified that he was called to investigate the accident. He received the call about 11:40 a. m. The day was clear and the roads were dry. He found the 1949 Chevrolet belonging to Claude Pantlen about 27 feet south of the intersection and the 1955 Chevrolet belonging to the defendant about the same distance west. The Pantlen car was on its side, and the Gottschalk car was upright. There was considerable debris and scars on the blacktop in the center of the intersection. He found no skid marks made prior to the accident, and no marks that led up to the intersection.

Edward Sanders, a special deputy sheriff, received a call about the accident at 12:20 p. m. When he arrived the two drivers were gone. Mr. Sanders confirmed the testimony of Claude Baker as to the physi-

cal conditions at the cross-roads and the position of the cars. This witness testified that there was intermittent growth of weeds along the sides of both roads, which while not continuous, made it possible for automobiles to be hidden at particular times on both roads.

Thomas A. Dossett, the postmaster at Stanford, testified that the physical and mental condition of Claude Pantlen on and before the accident was good. He testified that Mr. Pantlen had been appointed a substitute rural mail carrier in 1937 and estimated his average yearly earnings from that source at $500 to $600.

C. H. Rose, a partner in business with Claude Pantlen, testified that Mr. Pantlen was in good physical and mental condition at the time of the accident, and that he averaged about $25 per week for his compensation from this business; that Mr. Pantlen had the milk business of the partnership and he, the witness had the grocery store.

Everett Burden, whose testimony has been mentioned heretofore, was the only eyewitness. He was approaching the intersection from the west, and saw both cars. He first saw the Gottschalk car approaching from the east when it was about 400 feet from the intersection. He saw the Pantlen car about 300 feet north of the intersection. He estimated the car from the east was traveling about 65 miles per hour and the car from the north about 50 miles per hour. He saw no other cars on the two roads, and was about 400 feet from the intersection when the two cars collided. He did not see either car slow down before entering the intersection. After seeing the Pantlen car about 300 feet from the intersection he did not see it again until it entered the intersection. He did not see either car swerve before the accident and heard no horn.

Charlotte Pantlen, the widow of the deceased Claude Pantlen, testified that her husband's average yearly

earnings were from $2000 to $3500 and that he was 48 years of age at the time of his death and at the time of the accident in good mental and physical condition.

Keith Loeffler, a witness for the defendant whose home is a quarter of a mile north of the intersection heard a muffled sound and looked and saw one car in the air. When he arrived at the scene of the accident only the two cars involved and the car of Mr. Burden were present. Mr. Gottschalk was in his car and Mr. Pantlen was lying in the field about 40 feet from his car. He did not observe any skid marks on the roads. He had traveled this intersection many times and stated that in his opinion on the day in question, there was nothing along the fence line to the north or east that would obstruct the vision of a car coming from the north or the east. He testified that the east-west road was the more heavily traveled road.

Harlan Loeffler, father of Keith Loeffler, a witness for the defendant, went to the scene of the accident with his son. He testified there were no skid marks and that there was no obstruction along the fence line immediately to the east or the north of the intersection. He also testified that the east-west road was the more traveled road.

Percy Logston, a witness for the defendant, lived south of the intersection. He arrived at the intersection about 2 or 3 minutes after the accident. He did not see it happen, but his wife saw the dust. He did not inspect the roads for skid marks but testified that the field in the northeast corner was planted in alfalfa which was about one foot high. He also testified that the main traveled road was the east-west highway.

A number of pictures were introduced in evidence showing the positions and the condition of the two cars after the collision. These pictures show that the Pantlen car was crushed inward on the left side, ap-

168

proximately the center of the car, but that the front of the Pantlen car was relatively undamaged, while the Gottschalk car was heavily damaged in the front and relatively undamaged otherwise. Considering these pictures in the light of the testimony which places the point of collision at the center of the intersection, it would seem to be without question that the Pantlen car was in the center of the intersection when it was hit, considering also the relative speed of the two cars from the testimony of the only eyewitness, and taking into consideration that it must be admitted that the Gottschalk car was driven into the Pantlen car, it would appear that Pantlen was first in the intersection.

The defendant's theory is that the plaintiff's intestate was guilty of contributory negligence as a matter of law, and that the plaintiff failed to meet the affirmative burden of showing that her intestate was free from negligence that contributed to his own injury and that the trial judge should have directed a verdict in favor of the defendant. And in support of this theory, the defendant cites the requirements that must be met before the plaintiff can recover, one being that the plaintiff must be free from contributory negligence, or stated conversely, the plaintiff must show that the plaintiff's intestate was in the exercise of due care and caution for his own safety at the time of the accident. This contention sets out the basic law of negligence in Illinois, which cannot be disputed.

As said in Pennington v. McLean, 18 Ill.App.2d 316: "In order that this judgment stand it must affirmatively appear from the record that at and immediately before the collision plaintiff's intestate was not guilty of any negligence which proximately contributed to cause this accident, that defendant was guilty of some negligent act or omission charged in the complaint and that the negligence of the defendant was the proxi-

mate cause of, or proximately contributed to cause, the death of plaintiff's intestate. (Illinois Cent. R. Co. v. Oswald, 338 Ill. 270, 273.)"

However, such evidence as to the exercise of due care and caution for his own safety required of the plaintiff's intestate, need not necessarily be direct testimony but may be drawn by reasonable inferences from the evidence in the case.

The case of Sharp v. Brown, 343 Ill. App. 23, holds that where the evidence of eyewitnesses is vague or unsatisfactory, circumstantial evidence as to the plaintiff's due care may be considered. This case also holds that a driver approaching an intersection from the right, cannot, as a matter of law, proceed upon the conclusive presumption that a vehicle approaching from his left will yield the right of way, since this is not an absolute rule but governed by conditions of speed and distance, so that its application must be predicated upon the facts in each case.

It is equally well established by the law in Illinois, that one cannot look with unseeing eye and not see the danger which he could have seen by the proper exercise of his sight, or stated another way, one will be deemed to have observed that which would necessarily have been seen if he had looked, and will not be absolved of the charge of negligence in failing to look by testimony that he looked and did not see. Crowe Name Plate & Mfg. Co. v. Dammerich, 279 Ill. App. 103; Lawson v. Jorjorian, 293 Ill. App. 431; Greenwald v. Baltimore & O. R. Co., 332 Ill. 627; Holt v. Illinois Cent. R. Co., 318 Ill. App. 436; Grubb v. Illinois Terminal Co., 366 Ill. 330; Dee v. City of Peru, 343 Ill. 36.

Defendant cites the case of Tucker v. New York, C. & St. L. R. Co., 12 Ill.2d 532, in support of his contention that the motion for a directed verdict for the defendant should have been allowed. The court in that

case, on page 534 said: "The rule of law, to be applied in determining whether the trial court should have directed a verdict for the defendant, is clear. A motion for a directed verdict should be allowed if, when all the evidence is considered, with all reasonable inferences to be drawn therefrom in its aspects most favorable to the party against whom the motion is directed, there is a total failure to prove one or more essential elements of the case—in the case at bar, the element of due care. Carrell v. New York Cent. R. Co., 384 Ill. 599; Greenwald v. Baltimore and O. R. Co., 332 Ill. 627; Illinois Cent. R. Co. v. Oswald, 338 Ill. 270." And the court in the Tucker v. New York, C. & St. L. R. Co. case in passing on the province of the reviewing court as to a determination of contributory negligence on the part of the plaintiff, said: "The determinative question presented to us is whether the evidence, taken most favorably to the plaintiff, shows that he was guilty of contributory negligence as a matter of law. While this court is precluded from weighing the evidence, except as to equitable issues, to determine where the preponderance lies, (Ill. Rev. Stat. 1955, chap. 110, par. 92 (3)(b),) where a motion is made in the trial court to direct a verdict, we may examine the evidence to determine whether, as a matter of law, there is any evidence in the record to prove the essential elements of the case."

The law as stated in the above cited cases, does not constitute the answer to the question presented in this case. The question here is whether or not the plaintiff's intestate was guilty of contributory negligence as a matter of law. If the question of contributory negligence is one of fact, our courts have uniformly held that this is a matter for a jury to decide, and a directed verdict for the defendant would be improper.

171

■ ■ Our courts have passed on the question many times, but in the final analysis the facts of the particular case being reviewed are determinative. Because the facts in each case present different questions, no hard or fast rule can be laid down. However, our courts have stated general rules that must apply to any case in determining whether or not the question is one of fact or law. As stated in the case of Dee v. City of Peru, 343 Ill. 36, at page 42;—"When there is any evidence before the jury which, taken with its reasonable inferences in its aspect most favorable to the plaintiff, tends to show the use of due care, the question of due care is one for the jury. Whether there is any such evidence is a question of law. (Pienta v. Chicago City R. Co., 284 Ill. 246.) In determining such question this court can examine the record only to determine whether there is any evidence so tending to support the cause of action. (Hinchliffe v. Wenig Teaming Co., 274 Ill. 417; Reiter v. Standard Scale and Supply Co., 237 Ill. 374; Libby, McNeill & Libby v. Cook, 222 Ill. 206.)"

In the case of Briske v. Village of Burnham, 379 Ill. 193, the court in that case, in passing on the question of contributory negligence said: "It is true, as plaintiff maintains, that contributory negligence is ordinarily and preeminently a question of fact to be decided by a jury. Contributory negligence becomes, however, a question of law when it can be said that all reasonable minds would reach the conclusion, under a particular factual situation, that the facts did not establish due care and caution on the part of the person charged therewith."

In the case of Blumb v. Getz, 366 Ill. 273, it was said: "The question of contributory negligence is one which is preeminently a fact for the consideration of a jury. It cannot be defined in exact terms and unless it can be said that the action of a person is clearly and palpably

172

negligent, it is not within the province of the court to substitute its judgment for that of a jury which is provided for the purpose of deciding this as well as the other questions in the case."

In the case of Geraghty v. Burr Oak Lanes, Inc., 5 Ill.2d 153, at page 162, that court said: "The question whether a plaintiff has been guilty of contributory negligence is ordinarily and preeminently a question of fact, upon which he is entitled to have the finding of a jury. It can become a question of law only when from the undisputed facts all reasonable minds, in the exercise of a fair and honest judgment, would be compelled to reach the conclusion that there was contributory negligence. Lasko v. Meier, 394 Ill. 71." And the court in that case, on pages 163 and 164 of the opinion, said: "It is not the function of the reviewing court to substitute its judgment for that of the jury upon controverted questions of fact. It is fundamental law in our jurisprudence that all controverted questions of fact, in a jury trial, must be submitted to the jury for decision. This is primarily the exclusive function of the jury, and to withdraw such questions from its consideration is to usurp its function. Ney v. Yellow Cab Co., 2 Ill.2d 74."

The case of Ritter v. Hatteberg, 14 Ill.App.2d 548, was a case involving a collision at an intersection. In that case the question of contributory negligence on the part of the plaintiff was raised. And the court in that case, in passing on the question of contributory negligence said: "The question of contributory negligence is one which is preeminently a fact for the consideration of a jury. Blumb v. Getz, 366 Ill. 273, 277. The question of due care is always a question of fact to be submitted to a jury whenever there is any evidence in the record which, with any legitimate inference that may reasonably and legally be drawn therefrom, tends to show the exercise of due care. Thomas v. Buchanan,

173

357 Ill. 270, 278. It becomes a question of law only when the evidence is so clearly insufficient to establish due care that all reasonable minds would reach the conclusion that there was contributory negligence. Ziraldo v. W. J. Lynch Co., 365 Ill. 197, 199; McManaman v. Johns-Manville Corp., 400 Ill. 423, 430."

In the case of Cloudmen v. Beffa, 7 Ill.App.2d 276, it was held: "Even where the facts are admitted or undisputed but where a difference of opinion as to the inference that may legitimately be drawn from them exists, the questions of negligence and contributory negligence ought to be submitted to the jury—it is primarily for the jury to draw the inference: Denny v. Goldblatt Bros., Inc. (1939), 298 Ill. App. 325. And a verdict may not be set aside merely because the jury could have drawn different inferences or because judges may feel, if they did, that other conclusions than the one drawn by the jury would be more reasonable: Lindroth v. Walgreen Co. (1950), 407 Ill. 121."

This court in the case of Thomas v. Smith, 11 Ill.App.2d 310, which was a case involving a collision at an intersection, said: "To attempt to differentiate or distinguish between the facts in this case and the facts in other cases decided by our courts would be difficult and at best inconclusive. Each case must rest upon its own facts. It must be conceded that the question of whether or not the defendants were negligent and whether or not the plaintiffs were in the exercise of due care for their own safety are questions of fact. If there is any evidence in the record which, taken with its intendments most favorable to the plaintiffs, tends to support the verdict of the jury, the trial court had no right to enter a judgment notwithstanding the verdict. Pitrowski v. New York, C. and St. L. R. Co., 4 Ill.2d 125, 126; Mueller v. Elm Park Hotel Co., 398 Ill. 60, 63. It is only when there is no evidence as a matter of law to sustain either the plaintiff's or the

174

defendant's claims that a judgment may be rendered notwithstanding the verdict." While the language of the court in that case is concerned with a judgment notwithstanding the verdict, the law enunciated would apply to a directed verdict for the defendant. And the court in that case continuing, said: "Where the questions of negligence or due care cannot be proved by direct evidence they may be proven by evidence entirely or largely circumstantial in nature."

■ While it is true that the driver approaching an intersection cannot, as a matter of law, proceed upon the conclusive presumption that a vehicle approaching on his left will yield the right of way, he would be entitled to assume that persons approaching on his left would observe the law and respect his right. Warner v. Burke, 302 Ill. App. 85; Partridge v. Eberstein, 225 Ill. App. 209. As said in the case of Dees v. Moore, 335 Ill. App. 318, "Appellees here had a right to assume that appellant, as he approached this intersection, would comply with the statutory requirement and yield the right of way." And in this case, even assuming that both vehicles were traveling at the same rate of speed, were the same distance from the intersection at the same time, the Pantlen car had the right of way and the Gottschalk car would have the statutory duty to yield the right of way. Illinois Rev. Stat. Chap. 95½, Section 165(b) provides: "When two vehicles enter an intersection from different highways at approximately the same time, the driver of the vehicle on the left shall yield the right-of-way to the vehicle on the right."

In this case there is not much that is in dispute. The speed of the two cars is established by the witness Burden. The pictures show without question that the Gottschalk car was driven into the side of the Pantlen car. There was no collision with other objects which may have damaged the cars, as was shown in the case

175

of Sharp v. Brown, 343 Ill. App. 23, where the court in that case in commenting on the pictures introduced in evidence, said that it could not be determined whether the damages shown were caused by the original impact or by the subsequent gyrations. Here there was one collision and no subsequent gyrations. These pictures show the crushing inward of the left side of the Pantlen car with no great amount of damage to the front of the Pantlen car and a great amount of damage to the front of the Gottschalk car, with the inescapable conclusion that at the very moment of impact, taking into consideration the testimony of the witnesses, that the impact occurred in the center of the intersection, the Pantlen car was in the intersection before the Gottschalk car entered the intersection, and was crossing in front of the Gottschalk car. The evidence establishes that the speed of the Pantlen car was approximately 15 miles per hour less than that of the Gottschalk car, so that as the two cars approached the intersection, the Pantlen car was the nearest to the intersection. Pantlen had the right to assume that Gottschalk would observe the statutory requirement and yield the right-of-way. All these facts and inferences constitute and present questions of fact for the jury. They do not present such a situation where it can be said that all reasonable minds would reach the conclusion that the facts did not establish due care and caution on the part of the plaintiff's intestate. Under the evidence in this cause, we must hold that the evidence for the plaintiff, together with the inferences to be reasonably drawn therefrom, present questions of fact which were preeminently questions for the jury and this court has no right to substitute its judgment for that of the jury on such questions.

The other point raised by the defendant is that the trial court erred in giving Plaintiff's Instruction No. 1, and that such error, by reason of the nature of

the case, was prejudicial. This point cannot be considered by this court since the defendant failed to abstract all of the instructions given in the cause. Our courts have uniformly held that error cannot be predicated upon the giving, refusal or modification of instructions unless all the instructions are set out in the abstract, for the reason that there may have been other instructions given which cured the errors complained of. Reavely v. Harris, 239 Ill. 526; Thompson v. People, 192 Ill. 79; Siegel, Cooper & Co. v. Norton, 209 Ill. 201; Randall Dairy Co. v. Pevely Dairy Co., 291 Ill. App. 380.

The judgment will be affirmed.

Affirmed.

ROETH, P. J. and CARROLL, J., concur.